Jack ADARGO, Plaintiff,

v.

Roy BARR, Defendant.

Civ. A. No. 79–K–1138.

United States District Court,
D. Colorado.

Jan. 4, 1980.

Jack Adargo, pro se.

Edward R. Martinez, Asst. Atty. Gen., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

In this action, Jack Adargo, an inmate at the . Canon Correctional Facility, alleges that as the result of his treatment by prison officials during an administrative adjustment hearing for alleged rule violations, he was denied the due process rights guaranteed him by the Fourteenth Amendment of the United States Constitution. The allegations reveal that on July 23, 1979, Adargo was involved in a cellhouse disruption where, according to corrections officer R. D. Henley, who was present at the time, Adargo refused to disrobe when ordered to do so during a security shakedown and verbally abused Henley. According to Adargo, he did disrobe when so ordered. In his complaint, Adargo further alleges that after ordering him to disrobe, Henley told him to remove his shoes and socks. Adargo maintains that he then said to Henley, "What's wrong with you? My shoes and socks are already off." This incident, according to Adargo, led the inmates in the cellhouse to yell and "call down" Henley for "making an obvious situation which was embarrassing to him." On August 8, 1979, Adargo was taken before the Administrative Adjustment Board to answer charges for the alleged violations which took place July 23, 1979. At the hearing, Adargo asked for a continuance since the complaining witness,

officer Henley, was off duty and was therefore not present. Adargo alleges that he was told that the board would proceed without the witness. With that, Adargo refused to participate and left. The board, proceeding with the hearing in Adargo's absence, relied exclusively on the accusing officer's report entitled "Notice of Charge and Complaint." It is noteworthy that this report was written not by Henley, the accusing officer who was present during the cellhouse disruption, but by his supervisor, Captain Fox, and reflected Captain Fox's understanding of the facts of the situation. *See Appeals Committee Review of Appeal on Adargo, Jack # 41464, Answer to Allegation 3.* The allegations reveal that no attempt was made to seek any additional written or oral information regarding the events of July 23, 1979 as provided for in the Court of Penal Discipline.[1] Thus, based only upon the second-hand report, the board found Adargo guilty of four (4) rule infractions and sentenced him to punitive segregation for thirty-one (31) days, loss of forty-seven (47) days good time, and loss of privileges for ninety-six (96) days. In addition to these sanctions, the alleged rule infractions had a direct detrimental affect on his release, setting his original parole date back six (6) months. Adargo appealed the board's findings, but they were upheld by the Appeals Committee.

Adargo claims that the treatment afforded him, specifically, his being found guilty and removed to punitive segregation without being present at the hearing in which he was charged and sentenced, and the refusal by the hearing board to allow him the opportunity to confront the witness against him deprived him of his due process rights. Adargo seeks an order from this court directing the board to rescind its findings, an order directing the board to restore to him his previous penitentiary status, and an order restoring his original parole date. Defendant, Roy Barr, chairman of the Administrative Adjustment Board, has filed a motion to dismiss and supporting affidavits.

In his motion to dismiss, Barr urges four grounds for dismissal: (1) that plaintiff has failed to state a claim since he failed to exhaust his administrative remedies; (2) that plaintiff has failed to state a claim under 42 U.S.C. § 1983 because he voluntarily waived his right to appear before the board and participate in the proceeding; (3) that plaintiff failed to allege any facts which might be construed as a deprivation of a fundamental or federally protected right as required by § 1983; and (4) that plaintiff has failed to state a claim since defendant is charged with sufficient discretion to impose the sanctions for rule violations upon plaintiff.

This court is particularly sensitive to the disfavor in which motions to dismiss Civil Rights Act cases are held, especially those which are filed *pro se*. *See, e. g., Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Tuggle v. Evans,* 457 F.Supp. 1015 (D.Colo. 1978). Therefore, on a motion to dismiss, the allegations of fact must be viewed in the light most favorable to the plaintiff. A complaint should not be dismissed for failure to state a claim unless it clearly appears that the complainant can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kennedy v. Meacham,* 540 F.2d 1057 (10th Cir. 1976); and *Tuggle v. Evans,* 457 F.Supp. 1015 (D. Colo.1978).

I

■ Barr first urges dismissal on the ground that Adargo failed to exhaust his administrative remedies before seeking relief in federal court, namely, that Adargo failed to appeal the appeals committee's findings to the appeals chairman. This claim is without merit. It is a well-settled rule that civil rights plaintiffs, including prisoners, are not required to exhaust state remedies before seeking relief in federal

---

1. Pursuant to the *Code of Penal Discipline of Colorado Department of Corrections*, p. 20, after a disciplinary hearing

. . . . If required, in order to assure a fair and impartial hearing; additional written or oral information shall be sought by the Hearing Officer or Board . . . .

court. *See Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam); *Clappier v. Flynn,* 605 F.2d 519, 528 (10th Cir. 1979).

## II

■ Barr further argues that Adargo has no viable claim against him under 42 U.S.C. § 1983 since he voluntarily waived his right to appear before the board and participate in the disciplinary proceedings. Indeed, there is a noted absence of allegations regarding the participation of defendant Barr in any deprivation against Adargo of his right to attend the proceedings. The allegations reveal that the plaintiff was free to attend his disciplinary hearing, but chose not to because of Barr's refusal to continue the hearing until the requested witness could be present. Courts in this circuit have consistently recognized that "[p]ersonal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic,* 545 F.2d 1260, 1262–63 (10th Cir. 1976); *Battle v. Lawson,* 352 F.Supp. 156 (W.D.Okl.1972). Since Barr did not personally deprive Adargo of his right to attend the hearing, Adargo's claim of denial of due process based upon his absence from the proceedings does not state a cause of action under § 1983 and must be dismissed.

## III

Defendant Barr maintains that this case should be dismissed on the ground that the plaintiff failed to allege any facts which might be construed as a deprivation of a fundamental or federally protected right. In support of this, he argues that Adargo is not entitled as a matter of law to confront and cross-examine witnesses at an administrative adjustment hearing. It is true that in *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that an inmate has no constitutional right to confrontation and cross-examination of witnesses in prison

disciplinary proceedings.[2] *See also Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). However, the procedural rights articulated by the Supreme Court in *Wolff v. McDonnell, supra,* represent the minimum rights owed to inmates under the due process clause. *Gurule v. Wilson,* Consolidated Civil Action No. 74–A–926, Memorandum Opinion and Order (D. Colo. April 3, 1978). Where inmates are guaranteed additional procedural rights by state law, these rights are protected by the Constitution. *See Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Marioneaux v. Colorado State Penitentiary,* 465 F.Supp. 1245 (D. Colo.1979); *Long v. Ault,* Civil Action No. 78–K–1165 (D. Colo. February 6, 1979); and *Gurule v. Wilson, supra.* Under these conditions, the substantive basis for the inmate's rights does not lie in the United States Constitution, but rather in applicable state law.

■ In Colorado, the *Code of Penal Discipline of the Department of Corrections* is composed of administrative regulations governing procedure to be followed during disciplinary proceedings. Since the code was promulgated under authority vested by state law, it creates expectations of procedural rights in prison inmates that are constitutionally protected. *See Marioneaux v. Colorado State Penitentiary, supra,* at 1248. As set forth in *Gurule v. Wilson, supra,* the inmate's expectations regarding procedural rights are no less cognizable because they find their source in a manual promulgated by the Department of Corrections rather than in Legislative enactments. *See also Walker v. Hughes,* 558 F.2d 1247 (6th Cir. 1977). In the instant case, the code's explicit and specific directives regarding confrontation and cross-examination of inmates at disciplinary proceedings cannot be ignored. These provisions state:

> Whenever *practicable,* if requested by the accused inmate . . . the Hearing Board or Chairman of the Board should require the accusing party to appear and

**2.** The court recognized that many states do allow cross-examination at disciplinary proceedings, 418 U.S. at 568, 94 S.Ct. 2963, but said that rather than read the Constitution to

*impose* such a procedure that it thought it best to leave the matter to the "sound discretion of the officials of state prisons." 418 U.S. at 570, 94 S.Ct. at 2981.

testify. When such an appearance is not practicable, the accused shall be given an opportunity to submit to the Hearing officer or Chairman . . . written questions for the accusing party; the Hearing Officer or Chairman . . . shall *obtain* answers to any such questions prior to making the final decision. (Emphasis added.)

*Code of Penal Discipline of Colorado Department of Corrections*, at 20. Thus, an inmate of the Colorado Department of Corrections has a legitimate expectation [3] rooted in state law and protected by the Fourteenth Amendment of the United States Constitution that, unless impracticable, he will be given an opportunity to confront and cross-examine his accuser at a disciplinary hearing.

█ In this case, Adargo alleges that Barr and the adjustment board deprived him of his right to confront the witness against him at his disciplinary hearing. Since Adargo's constitutional right to face his accuser exists only if practicable, the issue is whether the facts, as alleged, present a situation in which it was indeed practicable for Adargo to confront and cross-examine his accusing witness. In Colorado, " . . . [t]he word 'practicable' means 'feasible.' An act is practicable of which conditions or circumstances permit the performance." *Rizer v. People*, 18 Colo. App. 40, 69 P. 315 (1902). Thus, in the instant case, if conditions or circumstances existing at the time of the hearing permit-

ted officer Henley, the accusing party to appear and testify, he should be required to do so. As to whether or not conditions or circumstances permit the accusing party to appear, this is a question which must be determined by the facts of each case. Obviously, if confrontation or cross-examination of Henley created a risk of reprisal or violence within the penitentiary, it would not have been practicable for him to appear. However, the allegations in this case reveal that the only reason Adargo was not permitted to confront Henley was that his disciplinary hearing was held during Henley's off-duty hours. There are no allegations of other conditions or circumstances existing at the time of the hearing which would not have permitted Henley's appearance. In essence, defendant's denial of Adargo's right to face his accuser, which led directly to Adargo's subjection to punitive segregation, loss of good time, loss of privileges, and set back of parole date, was based solely on the premise that, under the circumstances, permitting confrontation and cross-examination would have inconvenienced the hearing board and Henley. It is clear that the mere fact that prison officials find it inconvenient to permit confrontation and cross-examination of the accusing party at an inmate's disciplinary hearing does not render the accusing party's appearance impracticable.[4]

Circumstances at the time of the proceedings would have permitted the board to reschedule Adargo's hearing to take place

3. It should be emphasized that this expectation finds its source in the *Code of Penal Discipline*. Those who work at the Canon Correctional Facility must abide by the procedures outlined in this code. As maintained in *Gurule v. Wilson, supra,* "due process requires a two-way street . . ." Since inmates are compelled to follow rules and procedures at the penitentiary, so must those who are entrusted with the obligation to enforce these rules and procedures. As long as the procedures set forth in the code to be followed during disciplinary hearings are held out as official policy at the penitentiary, no inmate can be denied any procedural right provided for therein.

4. It has often been held that an individual's interest in his constitutional rights can never be sacrificed to promote a state's interest in con-

venience, efficiency, and speed. As stated in *Stanley v. Illinois*, 405 U.S. 645, 656, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972):

The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.

when Henely was on-duty, or Henley could have been required to appear during his off-duty hours.

The facts of this case, if proved, present a viable claim that Adargo was denied his state-created and constitutionally protected right to confront and cross-examine the witness against him at his disciplinary hearing.

## IV

■ Barr's final ground for dismissal is based upon his assertion that, as a prison official, he is charged with sufficient discretion to impose sanctions for rule violations upon the plaintiff. In the absence of deprivations which represent constitutional abuses, federal courts will defer to the discretion of administrative officials in the management of penal institutions. *See, e. g., Procunier v. Martinez*, 416 U.S. 296, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir. 1976); and *Tuggle v. Evans*, 457 F.Supp. 1015 (D. Colo. 1978). In the instant case, sanctions were imposed on Adargo as the direct result of being found guilty of rule violations in a constitutionally deficient disciplinary hearing. In light of this constitutional abuse, "discretion to impose sanctions for rule violations" claimed by Barr cannot be tolerated. Accordingly, it is

ORDERED that defendant's motion to dismiss based on plaintiff's claim that he was denied his due process rights when he was found guilty and removed to punitive segregation without being present at the hearing in which he was charged and sentenced is granted. It is further

ORDERED that defendant's motion to dismiss based on plaintiff's claim that he was denied due process when the hearing board refused to allow him the opportunity to confront and cross-examine the witness against him is denied. It is further

ORDERED that defendant shall answer the remaining claim for relief within ten days. Upon receipt of an answer the matter will be set for trial.