**Benjamin WOLFE, Plaintiff,**

v.

**Norman A. CARLSON, et al, Defendants.**

**No. 81 Civ. 3505–CSH.**

United States District Court, S.D. New York.

April 4, 1984.

Benjamin Wolfe, pro se.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for defendants; Steven E. Obus, Asst. U.S. Atty., New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff brings this action *pro se* alleging a deprivation of his Due Process rights during the course of disciplinary proceedings instituted against him while he was an inmate of the Federal Correctional Institution at Otisville, New York ("Otisville"). Jurisdiction is founded upon 28 U.S.C. § 1331. Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or, alternatively, for summary judgment in their favor pursuant to Fed.R.Civ.P. 56(b).

For the reasons stated, defendants' motion for summary judgment is granted.

### I.

*Factual Background*

On September 18, 1980, while an inmate at Otisville, plaintiff was informed in writing that he was charged with having damaged certain "perimeter fence poles" on the prison grounds two days earlier. (Administrative Record ["AR"], p. 1). According to an incident report by defendant Dale Groover, Correctional Supervisor, "[r]eliable and confidential information" revealed that plaintiff was "directly and solely" responsible for an estimated $1000 worth of property damage. (AR, pp. 1–2). As a result of these charges, plaintiff was placed in

administrative segregation on September 18, 1980 (Complaint, p. 3).

On September 22, 1980, the Unit Disciplinary Committee (the "UDC") convened to consider the incident, but decided to defer the hearing pending completion of investigations. (Bidwell, Aff. ¶ 4). Plaintiff was notified accordingly. (AR, p. 8). Plaintiff appeared before the UDC on September 26, 1980, at which time he was informed that his case was being transferred to the Institution Discipline Committee ("IDC") with a recommendation for disciplinary transfer and forfeiture of 60 days statutory "good time." (AR, p. 1). At that time, plaintiff was given a list of procedural rights regarding the IDC hearing, and was advised of his right to call witnesses. (Complaint, p. 3). Allegedly relying on a statement by UDC Chairman Bidwell that Otisville staff members need not be requested as witnesses because their testimony would automatically be considered, plaintiff claims to have requested the presence of six witnesses. (Complaint, p. 3). The written request form signed by plaintiff on September 26, however, contains only five names. (AR, p. 12).

An IDC hearing was held in plaintiff's presence on September 29, 1980. Plaintiff was accompanied by a staff representative and testified on his own behalf. (AR, pp. 15–16). Three of plaintiff's requested witnesses also appeared at the hearing and testified regarding their recollections of the evening of September 16. (AR, p. 17). Only one witness, an inmate Valdner, recalled being in plaintiff's presence at approximately 7:00 p.m.—the time at which the infraction allegedly occurred. (AR, pp. 1, 17). Two other inmates were not called to testify because the information they could provide was obtained through other witnesses. (AR, p. 16).

The IDC also considered several memoranda from two members of the correctional staff summarizing confidential information the staff members had received from inmate informants. (AR, pp. 16–18). In a signed memo dated September 18, 1980, P. Pitzer, C.S., summarized "reliable" infor-

mation gained from a confidential source describing the manner in which plaintiff allegedly destroyed the fence poles. (AR, p. 4). The confidential source, unnamed in the memorandum, is said to have previously supplied information that led to a finding of cocaine use by another inmate. *Id.* In two signed memos dated September 22 and September 24, 1980, D. Groover, C.S., summarized additional information he received from "a second reliable person" also implicating plaintiff in the fence destruction. (AR, pp. 9–10).

On the basis of this documentary evidence and the testimony of the three inmates, the IDC found that plaintiff had committed the acts charged, ordered forfeiture of 30 days statutory good time and recommended a disciplinary transfer. (AR, p. 16). The IDC provided plaintiff with a written statement of the evidence it relied upon and the reasons for the disciplinary action taken. (AR, pp. 15–18). The sanction was within the IDC's discretion in dealing with a "high severity" prohibited act. (Bureau of Prisons Policy Statement 5270.-3, §§ 541.11, 541.16). Plaintiff was subsequently transferred to a more secure facility at Petersburg, Virginia, and unsuccessfully appealed the IDC decision to the Otisville Warden (AR, p. 23), the General Counsel of the Federal Bureau of Prisons (AR, p. 20), and the Regional Director of the Federal Bureau of Prisons (AR, p. 21).

## II.

Plaintiff challenges the disciplinary process outlined above as violative of both the prison's promulgated regulations and his own due process rights. Although plaintiff asserts that his rights were infringed in "a staggering variety of ways," (Complaint, p. 4), I am able to discern only three claims in the petition which arguably present actionable deprivations of constitutional rights.

First, plaintiff contends that the reliance of the Otisville disciplinary committees upon written summaries of information obtained by investigating officers through inmate informants constitutes a denial of due process. Plaintiff argues that such second-

ary "reports" provide "no primary evidence of guilt" (Complaint, p. 5), are "hearsay" (Complaint, p. 6), and are so fraught with the risk of error that any decision based upon them "can only be considered arbitrary" (Complaint, p. 5).

Second, plaintiff claims that he was denied the opportunity to present testimony "vital" to his defense. (Complaint, p. 4). He claims that he actually requested six witnesses, including one Willie Rolon, and that Mr. Rolon's testimony and that of several staff members should have been presented either in person or by written statement.[1]

Finally, plaintiff asserts that his UDC hearing was not held within the 48-hour period prescribed by Bureau of Prisons Statement 5270.3, § 541.13(b) in contravention of his constitutional rights.

### III.

■ The Supreme Court and the Second Circuit have delineated the due process rights which must be accorded a prison inmate during disciplinary hearings. The disciplinary committee must give the prisoner at least 24 hours advance notice of the charges against him, and must inform him of the reasons for any action taken, and the evidence relied upon in reaching the decision. *Wolff v. McDonnell*, 418 U.S. 539, 563–572, 94 S.Ct. 2963, 2978–2982, 41 L.Ed.2d 935; *McCann v. Coughlin*, 698 F.2d 112, 121–122 (2d Cir.1983). An inmate also has the right to call witnesses and present evidence in his defense, "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals." *Wolff, supra,* 418 U.S. at 566, 94 S.Ct. at 2979. Further, a statutory right to good-time credits which can be forfeited only for serious misbehavior constitutes a liberty interest protected by the Due Process Clause. *Vitek v. Jones*, 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980); *Wolff, supra,* 418 U.S. at 555–58, 94 S.Ct. at 2974–75.

It is well established that "[t]here is no iron curtain between the Constitution and the prisons of this country." *McCann, supra,* 698 F.2d at 116, quoting *Wolff, supra,* 418 U.S. at 555–56, 94 S.Ct. at 2974–75. Nevertheless, the Supreme Court has recently reaffirmed the fact that "lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Indeed, "to hold ... that *any* substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Id.,* quoting *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). With these principles in mind, I turn to plaintiff's contentions.

1.  The Reliance of the IDC Upon Information Obtained Through Unnamed Inmate Sources

The Supreme Court in *Wolff v. McDonnell, supra,* has considered the extension of the right of confrontation to prisoners subject to disciplinary action. In declining to extend the right, the Court worried that "the inmate accuser, who might freely tell his story privately to prison officials, may refuse to testify or admit any knowledge of the situation in question," 418 U.S. at 568, 94 S.Ct. at 2980, and recognized that retaliation by fellow inmates "is much more than a theoretical possibility." *Id.* at 562, 94 S.Ct. at 2977. The Court was confident that "adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination." *Id.* at 567–69, 94 S.Ct. at 2980–81.

■ Nevertheless, the use of hearsay information derived from confidential sources cannot be unconditionally condoned. While *Wolff* did not mandate a

---

**1.**  Mr. Rolon had been transferred to a halfway house by the date of the IDC proceeding (Bren-

nan, Aff. ¶ 7).

general right to confrontation or cross-examination, it did note that "[t]he touchstone of due process is the protection of the individual against arbitrary action of government." *Id.* at 558, 94 S.Ct. at 2975, quoting *Dent v. West Virginia,* 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889). In the unusual situation where the decision-maker "cannot otherwise rationally determine the facts," courts in this Circuit have upheld a limited right to confront and cross-examine adverse witnesses during prison disciplinary hearings. *Green v. Nelson,* 442 F.Supp. 1047, 1057 (D.Conn. 1977). *See also Cardaropoli v. Norton,* 523 F.2d 990, 996–98 (2d Cir.1975); *Catalano v. United States,* 383 F.Supp. 346, 353 (D.Conn.1974). In reviewing the determination of the IDC, the Court must determine "whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by prison officials." *Willis v. Ciccone,* 506 F.2d 1011, 1018 (8th Cir.1974). *See generally,* Meyers & Rabiej, *Burden of Proof and the Standard of Judicial Review in Prison Disciplinary Hearings Involving Decisions Predicated upon Uncorroborated Hearsay Evidence,* 1979 So.Ill.U.L.J. 535, 545–52.

Several circuits have addressed the use of hearsay testimony in this context and have devised various constitutional criteria for evaluating prison disciplinary decisions based upon second-hand evidence from anonymous sources. In *Helms v. Hewitt,* 655 F.2d 487 (3rd Cir.1981), *rev'd on other grounds, Hewitt v. Helms, supra,*[2] the Third Circuit adopted a two-part procedure to be followed by prison tribunals in making disciplinary determinations:

"(1) [T]he record must contain some underlying factual information from which the [tribunal] can reasonably conclude that the informant was credible or his information reliable; (2) the record must contain the informant's statement [written or as reported] in language that is factual rather than conclusionary and

must establish by its specificity that the informant spoke with personal knowledge of the matters contained in such statement."

655 F.2d at 502, *quoting Gomes v. Travisono,* 510 F.2d 537, 540 (1st Cir.1974). After applying these criteria, the court held that a disciplinary action based solely upon an uncorroborated hearsay report of the testimony of an unidentified witness of unknown credibility constituted a denial of due process under § 1983.

In *Kyle v. Hanberry,* 677 F.2d 1386 (11th Cir.1982), plaintiff forfeited 435 days of statutory good time and was recommended for disciplinary transfer after being found guilty of assault upon an inmate. *Id.* at 1388. In ruling upon the use of hearsay information derived from an unidentified informant, the Eleventh Circuit stated:

"[M]inimum due process mandates that the IDC undertake in good faith to establish the informant's reliability, at least to its own satisfaction. There must be some information on the record from which a tribunal can reasonably conclude that the IDC undertook such an inquiry, and upon such inquiry, concluded that the informant was reliable. The committee should describe the nature of its inquiry to the extent that the committee is satisfied that such disclosure would not identify an informant.

*Id.* at 1390. The court added that the availability of other corroborating evidence might diminish the IDC's duty of inquiry. *Id.* at 1390–91.

The Fifth Circuit upheld one use of informant testimony in *Smith v. Rabalais,* 659 F.2d 539 (5th Cir.1981), *cert. denied,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982). There, a disciplinary determination was deemed constitutionally valid where a witness relaying information provided by a confidential informant testified before the IDC: 1) that he knew the informant, 2) that he had used him in the past, and 3) that the

---

**2.** The holding of the Third Circuit regarding disciplinary proceedings and hearsay testimony was not challenged by the petitioners before the Supreme Court. *See Hewitt v. Helms, supra,* 103 S.Ct. at 876, n. 3 (Stevens, J., dissenting). See also *Helms v. Hewitt,* 712 F.2d 48 (3d Cir.1983).

informant had first-hand knowledge of the incident reported. *Id.* at 540–42. Likewise, in *Dawson v. Smith*, 719 F.2d 896 (7th Cir.1983),[3] the Seventh Circuit upheld the use of confidential information as the basis for a disciplinary decision, but stated that "there must be some indication of [the source's] reliability." *Ibid.*

A number of district courts have gone further, and devised specific procedures to be followed by disciplinary committees in considering confidential hearsay testimony. *See, e.g., Rinehart v. Brewer*, 483 F.Supp. 165, 170 (S.D.Iowa, 1980); *Bartholomew v. Reed*, 477 F.Supp. 223, 227–28 (D.Or.1979), *modified*, 665 F.2d 915 (9th Cir.1982); *Finney v. Mabry*, 455 F.Supp. 756, 768–76 (E.D.Ark.1978). *See generally*, J. Gobert and N. Cohen, *Rights of Prisoners* § 8.05 (1981).

I need not choose from among these various approaches to dispose of plaintiff's claim. It is a core principle of *Wolff* that due process protects individuals, incarcerated or not, from arbitrary government action. 418 U.S. at 568, 94 S.Ct. at 2980. Each of these decisions recognizes that when a committee imposes discipline based solely on the report by a prison official of what an informant claims to have witnessed with no information as to the identity or the reliability of the informant, it has acted arbitrarily. It cannot be otherwise, for the committee, having no idea of the general credibility or possible motives of the informant, acts without any idea of the quality of the information on which it has acted. However, when the committee is given some means to evaluate the truth or falsity of the information on which it has based its action, it no longer acts without basis.

■ The committee which disciplined plaintiff was provided with summaries by prison officials of the purported eyewitness testimony of two informants. One of the informants had previously supplied accurate information. Thus they possessed information which would permit them to evaluate the value of the informant testimony: evidence of one witness's prior truthfulness and the mutual support provided by the corroboration. While such corroboration might not have been probative in a courtroom setting, "one cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding ..." *Wolff v. McDonnell, supra*, 418 U.S. at 560, 94 S.Ct. at 2976. Disciplinary committees may elect, as a matter of policy, to ascertain informant identities, to require informant affidavits, or to interview informants *in camera*. Such procedures would assure to a greater degree that prisoners are subjected to discipline only for good cause. However, it is not for the federal courts to dictate such procedures when, as here, the procedures chosen are not defective as a matter of constitutional law.

2. The Failure of the IDC to Call Plaintiff's Sixth Witness

■ An inmate has a right to call witnesses and present evidence in his defense, "when doing so would not be unduly hazardous to institutional safety or correctional goals." *McCann v. Coughlin*, 698 F.2d 112, 122 (2d Cir.1983), quoting *Wolff, supra*, 418 U.S. at 556, 94 S.Ct. at 2974. The Supreme Court has suggested, but not required, that the disciplinary committee "state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Baxter v. Palmigiano*, 425 U.S. 308, 321, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976), quoting *Wolff, supra*, 418 U.S. at 566, 94 S.Ct. at 2979.

Although plaintiff claims to have requested six witnesses prior to the IDC hearing (Complaint, p. 3), the record contains a signed and dated "Notice of Institution Discipline Committee Hearing," in which plaintiff listed the five witnesses he

---

**3.** This case originally was decided by a summary affirmance. *Dawson v. Smith*, 720 F.2d 681 (7th Cir.1983). The Court subsequently decided to issue an opinion, although an official citation is not yet available.

sought to have called on his behalf and summarized the expected testimony of each. Neither Willie Rolon nor any prison official was listed. (AR, p. 12). In addition, plaintiff has failed to allege that he either requested the presence of Mr. Rolon or asked that a statement be obtained from him. (AR, pp. 24–27). Since BOP Program Statement 5270.3, § 541.13(h) explicitly provides: "No witness need be called by the IDC whose name has not been listed on the [witness request] form," plaintiff had adequate warning that his failure to request them would result in their absence. Plaintiff cannot turn his own lack of diligence into a constitutional deprivation. *See Hasan Jamal Abdul Majid v. Henderson,* 533 F.Supp. 1257, 1273 (N.D.N.Y.), *aff'd mem.,* 714 F.2d 115 (2d Cir.1982) (Due process not denied by failure of disciplinary committee to call witnesses, where inmate did not request witnesses at or before the hearing). The reason for the committee's failure to call two listed witnesses is clear: their stated potential testimony simply repeated that of the inmates who were called. There was no abuse of discretion by the prison officials and surely no constitutional infringement.

**3. The Failure of the UDC to Hold Its Hearing Within Forty-Eight Hours**

■ The gravamen of plaintiff's final claim rests upon BOP Program Statement 5270.3, § 541.13(b), which states that an inmate "is entitled to an initial hearing before the UDC, held within 48 hours (excluding weekends and holidays) of the time staff became aware of the inmate's involvement in the incident...." Section 541.13(j), however, specifically provides that, "[t]he UDC may extend time limits imposed in this section for a good cause shown by the inmate or staff and documented in the record of the hearing."

Even assuming *arguendo* that this policy statement conferred an enforceable constitutional right, it is clear that the UDC had "good cause" for making a four-day deferral of its hearing. Plaintiff was informed in writing that investigation of the incident in question was being postponed pending receipt of additional information, and so acknowledged in writing. (AR, p. 8). Additional confidential information was in fact received during this short hiatus (AR, pp. 9–10). A hearing ultimately took place on September 26, 1980—only four days after the date originally scheduled. In view of a continuing and productive investigation by prison authorities, this Court finds that the UDC complied with the letter and spirit of its own regulations.

### CONCLUSION

There being "no genuine issue as to any material fact," Fed.R.Civ.P. 56(c), defendants' motion for summary judgment is granted, and the Clerk is directed to dismiss the complaint with prejudice.

It is SO ORDERED.