**Clifford HOWARD, Plaintiff,**

v.

**Lieutenant Walter WILKERSON, Lieutenant Michael Stokes and Superintendent James Sullivan, Defendants.**

**No. 86 Civ. 6823 (RPP).**

United States District Court, S.D. New York.

July 2, 1991.

**1004**

Michael G. Radigan, New York City by Michael G. Radigan, for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y., Department of Law, New York City by Ronald Turbin, Asst. Atty. Gen., for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action brought by a prisoner under 42 U.S.C. § 1983 alleging due process and equal protection violations stemming from disciplinary proceedings invoked against him while he was an inmate at the Sing Sing Correctional Facility in 1984. Plaintiff moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment on his claims against defendant Lieutenant Michael Stokes ("Stokes"). Defendants cross-move for summary judgment dismissing the complaint. For the reasons set forth below, plaintiff's motion is granted in part and denied in part and defendants' motion is granted in part and denied in part.

**BACKGROUND**

On October 11, 1984 Jose Figueroa ("Figueroa"), an inmate at the Sing Sing Correctional Facility, was allegedly attacked by a group of other inmates on a staircase outside the mess hall. No corrections officers witnessed the incident. Exh. B at 2, Howard Aff. A handwritten report by W. Stoddard, the corrections officer who took Figueroa to the emergency room after the attack, states:

> He [Figueroa] said "There was five of them and they were all black, and one of them piped me. I heard the others call him 'Cash.' I don't know the other guys names, I just got here."

Exh. M, Howard Supp. Aff. However, when Lieutenant Walter Wilkerson ("Wilkerson") later interviewed Figueroa about the incident, Figueroa named plaintiff Clifford Howard ("Howard") as one of the attackers and identified him from photographs Wilkerson showed him. Wilkerson Aff. ¶¶ 7–8.

On October 12, 1984 Wilkerson ordered that Howard be placed in keeplock confinement pending a disciplinary hearing. Howard Aff. ¶ 2 & Exh. B (Response No. 1 to Plaintiff's Request for Admissions). On October 15, 1984 Wilkerson filed an inmate misbehavior report against Howard. *Id.* ¶ 10 & Exh. A.

M.L. Hurston ("Hurston"), a corrections counselor appointed to assist Howard in preparing for his disciplinary hearing, interviewed Howard on October 16, 1984 and submitted a written statement on his behalf in essence stating that Howard denied any involvement in the attack. *Id.* ¶ 4; Exh. B, Wilkerson Aff.[1]

At 9:55 p.m. on October 20, 1984 Lieutenant Michael Stokes ("Stokes") convened a "Tier III" or "superintendent's" proceeding against plaintiff.[2] Stokes Aff. ¶¶ 6, 10. Stokes alleges that because his shift started at 3:00 p.m. and he had other responsi-

---

1. The counselor also discovered that the Figueroa's service file listed another inmate, "A. Howard," as one of Figueroa's enemies, but Figueroa assured Wilkerson that it was plaintiff and not "A. Howard" who had attacked him. Wilkerson Aff. ¶ 13.

2. Both Tier II and Tier III proceedings were disciplinary-related proceedings. Tier II referred to a "disciplinary" proceeding whereas Tier III designated a "superintendent's" proceeding. Stokes Aff. ¶ 20.

bilities, he frequently held disciplinary hearings after the facility "locked down" at 9:00 p.m. *Id.* ¶ 18.

The transcript of Stokes' remarks at the hearing include the statement that Howard "has refused to attend this hearing." *Id.*, Exh. A. Plaintiff claims, and defendants have admitted, that the officers assigned to bring plaintiff to the hearing informed plaintiff that they were taking him to the "adjustment committee" for an "adjustment hearing." Exh. A at 4–5, Stokes Aff.; Response No. 4 to Plaintiff's Request for Admissions. Plaintiff responded he was afraid to leave his cell at that time of night. *Id.* Plaintiff further alleges that he told the officers that he knew he had a "superintendent's hearing" but that he knew nothing about a so-called "adjustment hearing." Exh. G, Howard Aff. The officers thereupon informed Howard that Stokes would conduct the hearing in plaintiff's absence.

Wilkerson claims in his affidavit that in 1984 the term "adjustment committee" was commonly used to refer to both the room at Sing Sing in which disciplinary hearings were conducted and to refer to the proceedings themselves. Wilkerson Aff. ¶ 16.

The hearing was opened at 9:55 p.m. After reading the charges and a notation of M.L. Hurston who had been assigned as plaintiff's counselor (but was not present), Stokes adjourned plaintiff's Tier III hearing at 10:00 p.m. to reach a decision. Fifteen minutes later, Stokes reopened the proceeding and found Howard guilty of violating Rule 100.10 (assault). Stokes Aff. ¶¶ 10–11. In a document entitled, "Superintendent's Hearing Disposition Rendered," (hereinafter the "record of disposition") Stokes listed the evidence he relied upon as "Base [sic] on Officers Report & Inmates Written Statement." In his opposing affidavit, Stokes claims he relied not only upon Wilkerson's report but on earlier oral reports from Wilkerson and Officer Brady who assisted Wilkerson and oral statements from certain other gallery and block officers as well as Howard's written statement. *Id.* ¶ 12.[3] Stokes sentenced

Howard to 365 days of keeplock confinement but suspended 90 days of that sentence and gave credit for time served. Stokes also revoked Howard's telephone and commissary privileges for six months. *Id.* ¶ 11.

Two days later, on October 22, 1984, Howard submitted a "Request for Interview or Information" addressed to the "Commissioner of Sing Sing C.F." stating that he was innocent and had never been given the chance to attend the hearing and prove it. Exh. N, Howard Supp. Aff. Stokes conducted a second hearing on October 29, 1984, at which plaintiff again was not present, to review the circumstances surrounding plaintiff's absence from the October 20 Tier III proceeding. Plaintiff claims he was never notified of the October 29 hearing and there is no evidence that he was notified of the hearing. Howard Aff. ¶ 8. Stokes interviewed the officers involved in summoning plaintiff to the Tier III hearing. Exh. G, Howard Aff. Sergeant Leo Mollette stated at the hearing that when he confronted plaintiff in his cell that night:

> [Plaintiff] stated to me that he was having a Supts. proceeding and that he didn't think that Supt. would send for him at this particular time of night. I informed him that the hearing can be held anytime or that he would have to go down to the Adjustment Committee and tell them his problem here. He refused. He said, I'm not coming out of my cell at this time of night. I don't know what y'all are here for, but I'm afraid to come out of my cell at this time of night to go any place.

Exh. G at 2, Howard Aff. (transcript).

On October 30, 1984 Howard filed an appeal to James Sullivan ("Sullivan"), the superintendent of Sing Sing Correctional Facility. *Id.*, Exh. O. On November 13, 1984 Sullivan affirmed Stokes' decision and sentence. *Id.*

## DISCUSSION

Summary judgment is appropriate if the evidence offered demonstrates that there is

---

**3.** The oral reports and statements were not part    of the record of disposition.

no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the Court must view the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

### 1. Timeliness of the Tier III Hearing

■ Plaintiff claims that he was held in keeplock confinement for eight days prior to the superintendent's hearing in violation of New York regulations requiring that a Tier III hearing be held, absent exigent circumstances, within seven days of the inmate's initial confinement. Plaintiff relies on *Morrison v. Lefevre*, 592 F.Supp. 1052 (S.D.N.Y.1984), imposing § 1983 liability on prison officials who kept plaintiff confined for a total of 23 days prior to holding a disciplinary hearing. *Id.* at 1067, 1074. In this case, plaintiff's confinement for one additional day beyond the permissible limit does not amount to a constitutional violation redressable under § 1983. Accordingly, defendants' motion for summary judgment on this issue is granted and plaintiff's motion is denied.

### 2. Conduct of the Tier III Hearing

■ It has been well-established for many years that "an inmate is ... constitutionally entitled to a hearing and an opportunity to speak in his own defense" when accused of a disciplinary violation. *Wolff v. McDonnell*, 418 U.S. 539, 581, 94 S.Ct. 2963, 2987, 41 L.Ed.2d 935 (1974) (Marshall, J., concurring in part and dissenting in part). *See also Francis v. Coughlin*, 891 F.2d 43, 48 (2d Cir.1989) (under *Wolff,* "[i]nmates do enjoy ... a limited right to be informed about and to comment on adverse evidence"); *Sostre v. McGinnis*, 442 F.2d 178, 198 (2d Cir.1971) (in order to be "minimally fair and rational," a prison discipli-

nary hearing must afford the accused inmate "a reasonable opportunity to explain his actions"), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972).

The Supreme Court has held that in connection with a prison disciplinary hearing, due process requires that an inmate be provided with (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action taken. *See Wolff v. McDonnell*, 418 U.S. at 563–67, 94 S.Ct. at 2978–80.

Plaintiff claims that because he was misinformed on October 20, 1984 that he was being summoned to an "adjustment hearing" as opposed to the "superintendent's hearing" actually being held, his refusal to attend was justified and that continuing with the proceeding in his absence violated his rights to due process under *Wolff v. McDonnell* by depriving him of the opportunity to comment upon the evidence against him and call witnesses in his defense.

■ New York regulations governing superintendent's hearings provide that the inmate "shall be present at the hearing unless he refuses to attend...." N.Y.Comp.Codes R. & Regs. tit. 7, § 254.-6(b) (1990). Under ordinary circumstances, when an inmate voluntarily waives his appearance before a disciplinary hearing officer, he cannot then attack the adjudication as violative of his constitutional rights. *See Ghana v. Fauver*, No. 85–3545, 1989 WL 61872 (D.N.J. June 9, 1989), *aff'd*, 887 F.2d 261 (3d Cir.1989); *Morgan v. Ward*, 699 F.Supp. 1025, 1044 (N.D.N.Y.1988); *Adargo v. Barr*, 482 F.Supp. 283, 286 (D.Colo.1980). An inmate's refusal to attend a disciplinary hearing waives his due process objections, however, only when it occurs "through no fault of prison officials." *See Moody v. Miller*, 864 F.2d 1178, 1181 (5th Cir.1989). *See also Sanders v. Coughlin*, 168 A.D.2d 719, 564 N.Y.S.2d 496, 498 (1990) ("Unless an inmate know-

ingly, voluntarily and intelligently relinquishes his right to attend the hearing ... he must be present."), *appeal denied,* 77 N.Y.2d 806, 571 N.E.2d 84, 568 N.Y.S.2d 914 (1991).

In this case, a jury may find fault by prison officials. There is evidence that corrections officers approached plaintiff at an unusual time of night and used a term no longer in official use to refer to proceedings designated at that time as "superintendent's" hearings.[4] Advising a prisoner of the need to escort him from his cell in the late evening to attend a type of hearing for which he is not scheduled could well be threatening especially when the prisoner is charged with a serious breach of discipline.[5] Although Howard stated that he was awaiting a "superintendent's" hearing, there is no evidence that Sgt. Mollette or any other officer explained or attempted to explain that the "adjustment" hearing for which they were summoning plaintiff was in fact his superintendent's hearing. Whether guards and inmates at Sing Sing widely understood that the term "adjustment hearing" referred to a superintendent's hearing, as defendants contend, is an issue of fact. Furthermore, Stokes' scheduling hearings for a time approximately one hour after a prison is locked down, normally an unusual time, raises an issue of fact as to whether an inmate would not have been expected to refuse to attend.[6] Accordingly, the parties' motions for summary judgment on this issue are denied.

**3. Sufficiency of the Evidence Relied Upon**

A prison disciplinary action "does not comport with 'the minimum requirements of procedural due process' ... unless the findings of the prison disciplinary board are supported by *some evidence* in the record." *Superintendent, Mass. Correctional Inst. v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) (emphasis added). Since *Hill,* it has been held that hearsay evidence does not constitute "some evidence." *See Vasquez v. Coughlin,* 726 F.Supp. 466, 471 (S.D.N.Y.1989). *See also Wolfe v. Carlson,* 583 F.Supp. 977, 982 (S.D.N.Y.1984) (pre-*Hill*) ("[W]hen a committee imposes discipline based solely on the report by a prison official of what an informant claims to have witnessed with no information as to the identity or reliability of the informant, it has acted arbitrarily.").[7] Plaintiff claims that his due process rights were violated because Stokes based his finding of guilt at the Tier III hearing solely upon Figueroa's hearsay identification of plaintiff contained in Wilkerson's inmate misbehavior report.

With respect to this claim, defendants assert they enjoy qualified immunity, a doctrine which protects government officials sued in their personal capacities from liability for discretionary acts provided their conduct did not violate any "clearly established" federal statutory or constitutional rights existing at the time. *See*

---

**4.** Prior to June 1983, an "adjustment committee" initially handled all disciplinary cases, referring certain matters for superintendent's proceedings. In June 1983, the New York Department of Correctional Services replaced the two-tier disciplinary system with a system of three levels of hearings: Tier I, or a "violation hearing," Tier II, or a "disciplinary hearing," and Tier III, or a "superintendent's hearing." *See People ex rel. Vega v. Smith,* 66 N.Y.2d 130, 485 N.E.2d 997, 495 N.Y.S.2d 332, 336 (1985).

**5.** As one court has noted:

Great positive strides have been made in the modern administration of prisons, but the very nature of 'hard core' prisons and those imprisoned there assures that a dark side sometimes lingers. Well-known is the harshness of inprison 'justice' administered by prisoners against each other, including infamous

means for settling of scores based on jealousies, gang loyalties, and petty grievances. Unfortunately, there also still may be discrete instances wherein guards seek to retaliate against prisoners if they perceive that regular prison procedures will not adequately redress their grievances.

*Baker v. Lyles,* 904 F.2d 925, 934 (4th Cir.1990) (Sprouse, J., dissenting).

**6.** Hearings are conducted outside the cell block and require escorted travel through areas where independent witnesses would not be available after lock down, a situation which is unsettling to an apprehensive prisoner.

**7.** In *Carlson,* the disciplinary committee "possessed information which would permit them to evaluate the value of the informant's testimony." *Wolfe v. Carlson,* 583 F.Supp. at 982.

*Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Davis v. Scherer,* 468 U.S. 183, 190–91, 193–96, 104 S.Ct. 3012, 3017–18, 3018–20, 82 L.Ed.2d 139 (1984), *reh'g denied,* 468 U.S. 1226, 105 S.Ct. 26, 82 L.Ed.2d 919 (1984); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[8] Whether a federal right was "clearly established" at the time of a challenged action is an issue of law for the Court, *see Yalkut v. Gemignani,* 873 F.2d 31, 35 (2d Cir.1989), and should be resolved at the earliest possible stage of the litigation. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. If the law was not "clearly established" at the time of the purported violation, summary judgment dismissing the claims against the official is appropriate. *See Walentas v. Lipper,* 862 F.2d 414, 422 (2d Cir.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989).

■ It is thus necessary to examine whether it was "clearly established" in October 1984 that a hearing officer's failure to assess the credibility of hearsay information relating to inmate misbehavior constituted a violation of due process. In *Wolfe v. Carlson,* 583 F.Supp. 977 (S.D.N.Y.1984), a case decided in this district in April 1984, the court held that when a prison disciplinary committee "is given some means to evaluate the truth or falsity of the information on which it has based its action," *id.* at 982, it acts in a sufficiently non-arbitrary fashion to meet the requirements of due process. In addition, numerous courts in other circuits had held by 1984 that when a prison official relies on

hearsay information derived from a confidential informant,[9] due process requires the official to assess the reliability of the informant. *See, e.g., Kyle v. Hanberry,* 677 F.2d 1386, 1390 (11th Cir.1982); *Helms v. Hewitt,* 655 F.2d 487, 503 (3d Cir.1981), *rev'd on other grounds,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Goble v. Wilson,* 577 F.Supp. 219, 220 (W.D.Ky. 1983); *Rinehart v. Brewer,* 483 F.Supp. 165, 170 (S.D.Iowa 1980); *Bartholomew v. Reed,* 477 F.Supp. 223, 228 (D.Or.1979), *modified on other grounds,* 665 F.2d 915 (9th Cir.1982); *Finney v. Mabry,* 455 F.Supp. 756, 772 (E.D.Ark.1978). These cases together with *Wolfe v. Carlson* indicate that the due process rights plaintiff seeks to vindicate were "clearly established" at the time of his October 1984 disciplinary proceeding.[10] *Cf. Gittens v. Sullivan,* 720 F.Supp. 40 (S.D.N.Y.1989) (right not established in Second Circuit by 1987). No disciplinary hearing officer could have reasonably believed that merely accepting the written report of an officer not present at an alleged attack met the requirements of due process. Indeed if this were enough there would be no purpose in holding a hearing at all. Accordingly, defendants are not entitled to qualified immunity in relation to this claim.

Stokes' record of disposition indicated that the only evidence of guilt he relied upon was Lieutenant Wilkerson's inmate misbehavior report. No live testimony was received. No effort was made to test the truthfulness of Figueroa's accusation or to conduct a *Wade*-type examination into the manner of identification of plaintiff. A proceeding of this type could only consti-

---

**8.** By asserting the defense of qualified immunity, defendants implicitly concede that they are sued in their personal capacities. It follows that the eleventh amendment is no bar to this action.

**9.** The Court sees no difference from the standpoint of credibility between the accusation of a confidential informant and the accusation of an allegedly victimized inmate, particularly one the hearing officer knows has a psychiatric history requiring prison authorities to hold him in protective custody. Wilkerson Aff., Exh. C.

**10.** There is some disagreement in this circuit as to the quantum of judicial authority sufficient to

support a finding that a federal right was "clearly established." *Compare Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("the court must determine whether the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right in question") *with Weber v. Dell,* 804 F.2d 796, 803 (2d Cir. 1986) (three decisions by other circuits plus supportive language in several Second Circuit decisions sufficient), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). The Court's holding today rests upon the reasoning of *Weber.*

tute a "hearing" in the most literal sense. *See Wolff v. McDonnell,* 418 U.S. at 582, 94 S.Ct. at 2987 (Marshall, J., dissenting in part) (when an inmate is afforded no means to challenge the word of his accusers, the hearing "will amount to little more than a swearing contest ... [in which] even the wrongfully charged inmate will invariably be the loser"). Stokes' failure to assess Figueroa's credibility is significant due to the existence of an earlier statement by Figueroa that he did not know the names of any of his attackers and due to the prison records before Stokes showing that Figueroa had a history of psychiatric treatment since age 6. Under these circumstances, the disciplinary action taken was not supported by "some evidence" and, accordingly, plaintiff's motion for summary judgment against Stokes for denying him due process on this basis is granted.

### 4. Adequacy of Stokes' Record of Disposition

▇ In an apparent attempt to counter plaintiff's claim that Stokes relied solely upon hearsay evidence in making a determination of guilt, defendants allege their responses to Plaintiff's Request for Admissions that "Lieutenant Stokes possessed more information than the written material before him." Exh. B at 3, Howard Aff. Stokes stated in his affidavit that he relied upon oral reports by various prison officers. However, due process requires that plaintiff be provided with "a written statement by the factfinders as to the evidence relied on" in making a disciplinary determination. *See Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974). On its face, Stokes' record of

disposition was constitutionally inadequate. Accordingly, plaintiff's motion for summary judgment against Stokes for denying him due process on this basis is granted.

### 5. Failure to Serve Defendant Sullivan

Finally, defendants argue that all claims should be dismissed against Sullivan since he has not been served. The record reflects that on May 9, 1989 Howard provided a copy of the amended complaint for service by the U.S. Marshals. No response was received following service by mail. On July 31, 1989 the Marshals attempted personal service but learned that Sullivan was no longer employed by the New York State Department of Corrections. The summons and complaint were accepted by "Peggy Henry, Head Clerk."

▇ An incarcerated pro se litigant proceeding in forma pauperis is entitled to rely on service by the U.S. Marshals and dismissal for failure to serve a defendant in a timely manner is inappropriate. *See Romandette v. Weetabix Co.,* 807 F.2d 309, 311 (2d Cir.1986); *Williams v. Allen,* 616 F.Supp. 653, 656 (E.D.N.Y.1985) (service permitted 3.5 years after filing of complaint where incarcerated plaintiff relied on U.S. Marshals). Pursuant to Rule 6(b) of the Federal Rules of Civil Procedure and in the interests of justice,[11] plaintiff, now represented by appointed counsel, shall effect proper service of the second amended complaint upon Sullivan within 30 days from the date of entry of this opinion and notify the Court in writing thereof, or plaintiff's claims against Sullivan will be dismissed *sua sponte.*[12]

---

**11.** It appears no prejudice will result because Sullivan's interests in this action have been adequately protected by the Assistant Attorney General appearing on behalf of the other state defendants.

**12.** The Court rejects defendants' argument that Sullivan cannot be found liable under 42 U.S.C. § 1983 because he was not personally involved in the alleged constitutional violations. A supervisory official may be liable if, after learning of the violation through an appeal, the official failed to remedy the wrong or allowed a policy or custom under which unconstitutional practic-

es occurred to continue. *See Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986) (allegations that defendant superintendent affirmed sentence on appeal and may have been responsible for the conduct of prison disciplinary proceedings sufficient to survive summary judgment). In *Young v. Kihl,* 720 F.Supp. 22, 23 (W.D.N.Y.1989), the court held that the plaintiff alleged sufficient personal involvement where the complaint stated that the prison official "ratified" the alleged misconduct. Howard's complaint contains a similar statement. Second Amended Complaint ¶ 20.

All counsel are to attend a pretrial conference on Monday, August 5, 1991 at 9:00 a.m. in courtroom 302.

IT IS SO ORDERED.