Julio VASQUEZ, Plaintiff,

v.

Thomas A. COUGHLIN, Commissioner, New York State Department of Correctional Services, Donald Selsky, Director, Special Housing, James E. Sullivan, Superintendent, Sing Sing Correctional Facility, E. Esteves, Deputy Superintendent for Security, Sing Sing Correctional Facility, and Thomas Haskell, Captain, Sing Sing Correctional Facility, Defendants.

No. 87 Civ. 0162 (GLG).

United States District Court, S.D. New York.

Dec. 5, 1989.

Prisoners' Legal Services of New York, Poughkeepsie, N.Y. By: (Robert Selcov, Deborah Schneer, David C. Levin, of counsel), for plaintiff.

Robert Abrams, Atty. Gen., of New York, New York City By: (Judith E. Kaufman, of counsel), for defendants.

GOETTEL, District Judge.

Plaintiff, a prisoner committed to the New York State Department of Correctional Services ("DOCS"), brings this action against various officials of the DOCS, claiming his due process rights have been violated, in contravention of 42 U.S.C. § 1983 (1982).[1] Presently before this court are the parties' motions and cross-motions for summary judgment.

I. FACTS

At the relevant time for purposes of this action, plaintiff was committed to the Sing Sing Correctional Facility in Ossining, New York.[2] On approximately June 13, 1986 plaintiff was confined to his cell and on the following day was placed in the Special Housing Unit ("SHU") at Sing Sing based on his alleged involvement in the stabbing of a fellow inmate, Pedro Rivera, on June 12. Plaintiff and another inmate were charged with holding Rivera while a third inmate actually did the stabbing. The report placing plaintiff at the scene of the stabbing was filed by Sergeant Alfredo DeZayas based on information he received from a confidential informant.

Pursuant to DOCS regulations, a hearing was then held before Captain Thomas Haskell. At the hearing, plaintiff called a fellow inmate, Nelson Castillo, who testified that he and plaintiff were not at the scene of the stabbing on June 12. Castillo's testimony was taken outside the presence of plaintiff because Haskell feared collusion

---

1. Plaintiff's complaint also charges that defendants have violated his rights under New York laws and regulations. The specific laws and regulations allegedly violated, however, are not listed in the complaint.

2. Plaintiff has since been transferred to the Great Meadow Correctional Facility in Stormville, New York.

between plaintiff and Castillo. DOCS guidelines permit testimony to be taken in such a manner. Plaintiff also requested that the victim, Rivera, be called as a witness on his behalf. Haskell denied the request, however, because he had been informed that Rivera was in a hospital outside of Sing Sing. As it turns out, Rivera had actually returned to the Sing Sing Infirmary one day prior to the time of the hearing and, in fact, he was released into the general prison population one day after the hearing. This was the only reason stated on the record by Haskell for denying plaintiff's request, although he now claims that a concern for threats against Rivera by plaintiff also weighed in his decision. Haskell affirmed the charges against plaintiff based on DeZayas' report, his determination that Castillo was not credible, and "reliable sources" placing plaintiff at the scene.[3] Plaintiff was sentenced to one year in the SHU.

Plaintiff appealed this decision to defendant Donald Selsky, who overturned the ruling based on a lack of substantiating evidence. A new hearing was held before Captain Michael McGinnis and plaintiff was found not guilty. Rivera was permitted to appear at this new hearing and testified that plaintiff had not been involved in the incident. Plaintiff ended up spending 103 days in the SHU.

Plaintiff instituted this action claiming that the 103 days spent in the SHU were the result of various violations of his due process rights. Primarily, plaintiff claims that Haskell's failure to allow Rivera to testify at the initial hearing and his neglect in independently ascertaining the reliability of the confidential informant who spoke to DeZayas violated his rights. Moreover, plaintiff argues that the four supervisory defendants (*i.e.*, all but Haskell) violated his rights by not effectively teaching hearing officers about the policies for handling either unavailable witnesses or confidential informants.

Plaintiff now moves for summary judgment only with respect to defendants' fail-

ure to call Rivera at the initial hearing. Defendants have cross-moved for summary judgment on a number of grounds. First, they claim that neither of plaintiff's two primary allegations, failure to call a witness and failure to independently verify a confidential informant's credibility, states an actionable claim. Moreover, they contend that they are entitled to qualified immunity for actions taken in their official capacities. Finally, the supervisory defendants argue that they were not personally involved in these alleged violations and cannot be held liable on the basis of *respondeat superior.*

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden is on the moving party to demonstrate the absence of a material, factual dispute. Fed.R.Civ.P. 56(e). If that burden is met, the non-moving party cannot simply contend that their complaint sets forth a valid cause of action. Fed.R.Civ.P. 56(e). They "must set forth specific facts showing that there is a genuine need for trial," Fed.R.Civ.P. 56(e), and there must be more than merely "some metaphysical doubt as to [those] material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In determining whether that burden is met, however, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). Against this backdrop of summary judgment jurisprudence, we turn to the instant motions, the resolution of which will be divided between a discussion of the potential liability of defendant Haskell and that of the supervisory defendants.

---

**3.** We are unclear as to who or what these reliable sources were. Defendants' counsel appeared equally unenlightened when questioned about these sources at oral argument.

## A. *Defendant Haskell*

Plaintiff claims that defendant Haskell's failure to call Rivera as a witness and his failure to ascertain the informant's reliability constitute due process violations.

### 1. *Failure to Call Witness*

■ With respect to the issue of calling Rivera, plaintiff moves for summary judgment, claiming that the right of a prisoner to call witnesses on his behalf is clearly established and that Haskell's failure to call Rivera was a violation of this right. *See Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). Moreover, while plaintiff recognizes that the Supreme Court in *Wolff* created an exception to this right when it would "be unduly hazardous to institutional safety or correctional goals," *id.*, he argues that neither of these exceptions is applicable. First, he suggests that Haskell should have done a further investigation as to Rivera's whereabouts at the time of the hearing. This would have shown the non-existence of any institutional need to prevent Rivera from testifying.[4] Plaintiff also argues that an adjournment of the hearing for a short period of time would have alleviated any concern for institutional or correctional goals. Finally, plaintiff suggests that Haskell's alleged fear of Rivera being intimidated is specious and, nonetheless, procedures have been established for taking testimony outside the presence of the charged inmate. In fact, this exact procedure was used with plaintiff's initial witness, Castillo, who Haskell was afraid might collude with plaintiff.

Defendants counter by arguing that Haskell's reasons were within the exceptions articulated by the Supreme Court since they were "logically related to preventing undue hazards to 'institutional safety or correctional goals.'" *Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985) (quoting *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979). They argue that concerns for Rivera's physical well-being certainly relate to institutional safety and the fact that Rivera was not actually in an outside hospital does not negate the logic of their reasons. Mere negligence, they contend, does not create a Constitutional violation. Moreover, with respect to interviewing Rivera outside plaintiff's presence, they argue that this is not a Constitutional right and the mere fact that it was done for Castillo does not mean this procedure must always be followed.

Defendants are accurate in contending that negligence alone will not amount to a due process violation. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). Moreover, the Supreme Court has cautioned that "[w]e should not be too ready to exercise oversight and put aside the judgment of prison administrators." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979. We find, however, that if Haskell is to be subject to liability, it would not be due to mere negligence, but rather, because his acts and omissions evidence an intent to deprive plaintiff of his Constitutional rights. *See Daniels,* 474 U.S. at 334, 106 S.Ct. at 666. Such a finding would necessarily determine that the reasons Haskell gave for not calling Rivera at the initial hearing were not logically related to institutional safety or correctional goals. We cannot as a matter of law say that either party has sufficiently proven that genuine issues of material fact do not exist as to this issue. A determination of many factual issues is necessary, notwithstanding the parties' bold assertions. For instance, Haskell's actions in not ascertaining the availability of Rivera at a later date must be balanced against defendants' suggestion that institutional guidelines require the completion of a hearing within fourteen days after the filing of a misbehavior report.[5] The fact that it was the actual vic-

---

4. Rivera's medical records are inconclusive as to his physical ability to appear at the hearing. However, the fact that he was moved from the hospital to the infirmary and, more importantly, that he was released from the infirmary to the prison's general population one day after the

hearing would suggest that Rivera probably could have testified.

5. Since the regulations requiring the completion of a hearing within fourteen days presumably exist for the inmate's protection, plaintiff can make a strong argument that a request for a

tim, rather than a mere character or alibi witness, who would be giving such testimony is another factor that must be weighed in assessing Haskell's actions. In addition, since Haskell allowed Castillo to testify outside the presence of plaintiff and it was a procedure specifically authorized by DOCS guidelines, it may have been logical to use this approach with Rivera. These various outstanding questions of fact prevent us from granting summary judgment to either party on the issue of the failure to call Rivera as a witness.

### 2. Independent Assessment of Credibility of Confidential Informant

■ The second issue raised in plaintiff's complaint is that Haskell relied on the information given to DeZayas without independently determining the credibility of the informant or the reliability of his information. Defendants have moved for summary judgment on this count, claiming there is no such due process right and, even if there is, Haskell satisfied the requirement by speaking to DeZayas about the information contained in DeZayas' report.

The parties both recognize that neither the Supreme Court nor the Court of Appeals for the Second Circuit has explicitly stated that an inmate in a disciplinary proceeding has a due process right to have the reliability and credibility of a confidential informant independently assessed by a hearing officer.[6] Thus, defendants rely on the Supreme Court's decision in *Superintendent, Massachusetts Correctional Inst. v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), which states that judicial review of the decision of a correctional institution merely requires a determination of whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455, 105 S.Ct. at 2774. Defendants then

proceed to discuss the actions purportedly taken by Haskell to assure that there was, in fact, some evidence to support his decision. Specifically, they suggest that Haskell spoke to DeZayas about the incident, in conformity with his allegedly common practice of speaking to the reporting officer in cases involving confidential informants. Therefore, they contend, "Haskell's findings were premised on his factual determination." Def.Mem. at 14.

■ Plaintiff counters by citing numerous authorities specifically holding that an inmate has a right to the independent assessment of a confidential informant's reliability and credibility. *See, e.g., Hensley v. Wilson,* 850 F.2d 269, 276 (6th Cir.1988); *Kyle v. Hanberry,* 677 F.2d 1386, 1390 (11th Cir.1982). Many of these same authorities are discussed in Judge Haight's well-reasoned opinion in *Wolfe v. Carlson,* 583 F.Supp. 977 (S.D.N.Y.1984). While recognizing that the Supreme Court in *Wolff* clearly stated that inmates are not afforded an unequivocal right of cross-examination and confrontation during disciplinary proceedings, 418 U.S. at 567–68, 94 S.Ct. at 2980–81, Judge Haight stated that "the use of hearsay information derived from confidential informants cannot be unconditionally condoned." 583 F.Supp. at 980. Since the Supreme Court has recognized the gravamen of the due process clause to be a protection against arbitrary governmental action, *Wolff,* 418 U.S. at 558, 94 S.Ct. at 2975, it stands to reason that "when a committee imposes discipline based solely on the report by a prison official of what an informant claims to have witnessed with no information as to the identity or reliability of the informant, it has acted arbitrarily." *Wolfe,* 583 F.Supp. at 982; *see also Gittens v. Sullivan,* 720 F.Supp. 40, 43 (S.D.N.Y.1989) (Sprizzo, J.) (same conclusion based on policy considera-

---

waiver of this requirement should not be opposed by the DOCS. An inmate apparently would not gain anything by requesting an unjustified delay since he or she is confined immediately upon the filing of a misbehavior report. The record in this case does not indicate whether plaintiff ever expressed a willingness to waive this regulation.

6. In *Wolff,* the Supreme Court only stated that in a prison disciplinary proceeding the state must provide the prisoner with notice of the charges, an opportunity to call witnesses and present evidence, and a statement of the evidence relied on and the reasons for taking disciplinary action. 418 U.S. at 563–67, 94 S.Ct. at 2979–80.

tions underlying *Wolff*). As stated by the Eleventh Circuit in *Hensley*, to simply adopt the conclusion of an investigator as to an informant's reliability "is not fact finding[,] it is recordkeeping." 850 F.2d at 276. Therefore, we are convinced the more reasoned view is that to comport with the requirement of finding some evidence upon which to base his or her ruling, a hearing officer must somehow assess the credibility and reliability of a confidential informant.[7]

In this case, Haskell states that he relied on the report, on a finding that Castillo was not credible, and on other "reliable sources." Finding Castillo credible is not affirmative evidence of guilt and the mere statement that he had other sources, without noting them in his affidavit, telling his attorney about them, or suggesting the basis for concluding they were reliable does not create "any evidence" of guilt either. Therefore, we are left with DeZayas' report. Haskell contends that he spoke with DeZayas about the report and also that his customary practice was to speak to the officer preparing a misconduct report based on information supplied by a confidential informant. DeZayas' deposition testimony, however, is that he does not recall ever speaking with Haskell about either his investigation or the informant. Therefore, factual questions remain as to whether any determination of the reliability of the information or the credibility of the informant was ever made and summary judgment cannot be granted.

We note, however, that DeZayas testified at his deposition that the informant had previously given him reliable information. Moreover, DeZayas stated that the informant told him he had actually witnessed the incident and was not merely reporting hearsay information. While we do not at this time suggest the level of interrogation to be independently undertaken by a hearing officer, we are confident that these two factors, if true, are sufficient to satisfy Constitutional demands. *See Smith v. Rabalais*, 659 F.2d 539, 546 (5th Cir.1981), *cert. denied*, 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982). Therefore, we ultimately may be forced into a harmless error analysis. Even if Haskell's actions were "arbitrary," there may have been no deprivation of any protected rights since if DeZayas had offered this same testimony at the initial hearing the requisite evaluation of the reliability and credibility of the informant would have been completed.[8] This remains a question for another day, however, and for the aforementioned reasons we deny defendants' motion for summary judgment on this count.

### 3. *Qualified Immunity*

Defendants have also moved for summary judgment on the ground that they are entitled to qualified immunity.[9]

■ Government officials are entitled to qualified immunity for discretionary acts performed in the scope of their employment. *Neu v. Corcoran*, 869 F.2d 662, 665 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989). The Second Circuit has clearly articulated the instances when a defendant is entitled to qualified immunity.

A defendant may establish a right to qualified immunity by showing that "it was not clear at the time of the official act that the interest asserted by the plaintiff was protected by a federal statute or the Constitution;" or that "it was not clear at the time of the acts at issue that an exception did not permit those acts;" or that "it was objectively reasonable for [the official] to believe that his acts did not violate [plaintiff's] rights."

*Krause v. Bennett*, 887 F.2d 362, 368 (2d Cir.1989) (quoting *Robinson v. Via*, 821 F.2d 913, 920–21 (2d Cir.1987)). In this

---

**7.** We are also convinced that this was the established law at the time of the hearing. *See infra* p. 472. We suggest that this requirement is particularly important in a situation such as the one at bar where further criminal proceedings actually could have been brought based on plaintiff's alleged involvement in a criminal assault.

**8.** The mere fact that the informant was actually wrong does not necessitate our finding that plaintiff's due process rights were violated.

**9.** At this point we will deal specifically with Haskell's right to qualified immunity.

case, defendants have based their assertion of the affirmative defense on two different grounds.

■ With respect to the issue of calling Rivera as a witness, defendants argue that the third basis of qualified immunity should be applied. For all the reasons previously stated, they contend that it was "objectively reasonable" for Haskell to believe that Rivera could not testify at the hearing and that institutional safety or correctional goals superseded plaintiff's rights. As we noted earlier, however, just how reasonable Haskell's actions were is hotly disputed. Therefore, we cannot as a matter of law say that there are no genuine issues of fact as to this question. The extent to which Haskell may be entitled to qualified immunity must await further fact-finding. *See Langley v. Coughlin,* 888 F.2d 252, 254 (2d Cir.1989).

■ As to the right to an independent determination of the reliability and credibility of an informant, defendants rely on the first prong available for establishing the immunity defense. They contend that the right to such an assessment by a hearing officer was not clearly established law at the time of the hearing. In fact, defendants contend that this right is still not clearly established in this Circuit. Notwithstanding this argument, we find that the right to such an assessment was a matter of established law in 1986. While we recognize that the Supreme Court and the Second Circuit have not ruled that such a right exists, other authorities in existence at that time made it "sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). For example, Judge Haight's decision, as well as the numerous other circuit court decisions existing at that time, held that such a right existed. We realize that these are only persuasive authorities in our Circuit. However, when read in conjunction with the Supreme Court's caution against

arbitrary governmental action, we are confident that a reasonable official, while not being required to predict the future course of Constitutional law, *see McCann v. Coughlin,* 698 F.2d 112, 124 (2d Cir.1983), would find that ascertaining the credibility and reliability of an informant was required. *But see Gittens,* 720 F.Supp. at 43–44 (immunity granted based on finding that in 1987 the requirement was not clearly established in this Circuit). In addition, we note that defendant Selsky testified that as early as March 1985 he was requiring hearing officers to determine the reliability of confidential informants. Since the specific actions taken by Haskell with respect to this issue are unclear, we must await further factual determinations and we deny defendants' motion on this ground.

### B. *Supervisory Defendants*

Plaintiff's complaint names as defendants four employees of the DOCS besides Haskell. They are all sued based on their alleged failure to properly train and supervise hearing officers, specifically with respect to the procedures for calling temporarily unavailable witnesses and testing confidential informants' credibility.[10] Defendants have moved for summary judgment on this issue, claiming that the supervisory defendants were not personally involved in any alleged due process infringement and cannot be held liable on the theory of *respondeat superior.*

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 604–05, 46 L.Ed.2d 561 (1976) (quoting 42 U.S.C. § 1983 (1982)). There is no vicarious liability or *respondeat superior* under the statute. *City of Canton v. Harris,* —— U.S. ——, ——, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989). Accordingly, " 'personal involvement of defendants in alleged constitutional depriva-

---

**10.** Only one of these defendants, Selsky, had any direct involvement in the specific proceedings in this case. He presided at plaintiff's appeal and ordered a new hearing. Nonetheless, he, like the other supervisory defendants, is sued only in his supervisory capacity.

tions is a prerequisite to an award of damages under § 1983.'" *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)); *see also Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (mere "linkage in the prison chain of command" is not sufficient). The Second Circuit has spelled out four categories of involvement that can subject a defendant to liability: direct participation in the infraction; failure to remedy a wrong after learning of the infraction; creating a policy or custom under which violations occur, or ignoring the existence of such a policy or custom; or gross negligence in managing subordinates. *Williams*, 781 F.2d at 323–24. It is under the third category, creating or ignoring a policy or custom of deprivation of rights, which plaintiff claims the defendants are liable.

### 1. *Failure to Call Witness*

■ Defendants have produced numerous affidavits discussing the existing training procedures and manuals given to DOCS officers with respect to disciplinary proceedings. The departmental guidelines, in fact, spell out procedures for handling witnesses who are either temporarily unavailable, possibly requiring a temporary adjournment of a hearing, or unavailable because of a threat of collusion or intimidation, potentially requiring testimony to be taken outside the charged inmate's presence. In this case, Haskell used this latter procedure to take Castillo's testimony outside plaintiff's presence because he feared collusion between plaintiff and Castillo. The fact that Haskell did not use the same procedure with Rivera or request a temporary adjournment may have been an error or even a Constitutional violation. Moreover, his failure to follow guidelines established by DOCS may subject him to disciplinary measures from his employer. These issues are not our concern. Defendants have clearly implemented a policy that, in fact, guarantees and protects the rights of inmates to call witnesses on their behalf. They have successfully adduced evidence showing that there is no genuine factual dispute on this issue.

The burden then shifts to plaintiff to offer some evidence establishing a genuine need for a trial on this issue. Plaintiff has failed to produce such evidence. In effect, he is suggesting that since Haskell may not have followed the announced procedures, there must have been poor training. Plaintiff attempts to rely on the Supreme Court's decision in *City of Canton v. Harris*, —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), which held that the liability of a municipality due to its failure to train its subordinates can be established if the need for further training is "obvious" to prevent Constitutional violations. —— U.S. at ——, 109 S.Ct. at 1204. A blanket conclusion that such a need is "obvious," without further proof, does not satisfy the evidentiary burden imposed on plaintiff. Moreover, the *Harris* Court held that a municipality will only be subject to liability under section 1983 for a failure to train if its actions or omissions amount to a "deliberate indifference" to a plaintiff's rights. *Id.* The same standard should apply in this case, *see Fiacco v. City of Rensselaer*, 783 F.2d 319, 326–27 (2d Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987), but plaintiff has made no such showing. Therefore, summary judgment can be granted in favor of the supervisory defendants on the issue of the failure to call Rivera.

### 2. *Independent Assessment of Credibility of Confidential Informant*

■ The second claim upon which plaintiff seeks to subject the supervisory defendants to liability is based on the confidential informant issue. Once again, plaintiff suggests that a custom or policy existed that denied inmates their due process rights. He contends that it was not until 1988 that a memorandum outlining the procedures to be followed in these situations was distributed by DOCS, notwithstanding the admitted existence of problems prior to that date. Defendants, in turn, suggest that their training manuals actually spelled out policies for handling such informants. Moreover, Selsky testified that as early as 1985 he was reversing decisions of hearing

officers who failed to adequately assess the credibility and reliability of confidential informants. In fact, DeZayas stated that on a number of occasions he has been called as a witness at disciplinary hearings at the request of a hearing officer to testify as to the credibility and reliability of a confidential informant. Once again, the burden shifts to plaintiff to adduce some evidence suggesting the existence of a custom or practice that denies due process rights to inmates due to officers' failures to independently evaluate the informants. There has been no such evidence offered. The only real evidence plaintiff offers in support of this allegation is that Haskell and other officers have occasionally been reversed because they did not make independent assessments of credibility and reliability.[11] Again, however, the conduct of Haskell or other officers alone will not subject the supervisory defendants to liability, even if the supervisors could have done a better job explaining the policy. Plaintiff must show that the actions of these defendants in failing to train the officers amounted to a "deliberate indifference" to the rights of inmates. The sparse evidence offered by plaintiff does not create a question of fact on this issue and summary judgment is granted on behalf of the supervisory defendants.

## III. CONCLUSION

The foregoing constitutes the decision of this court. We deny plaintiff's and defendants' motions for summary judgment on the issue of Haskell's failure to call Rivera as a witness. We also deny defendants' motion for summary judgment as to Haskell's failure to test the reliability of the confidential informant. Finally, defendants' motion for summary judgment based on qualified immunity is denied. However, we do grant defendants' motions for summary judgment on behalf of the supervisory defendants, Coughlin, Selsky, Sullivan, and Selsky, and order the clerk of this court to dismiss them from this case. This ruling renders moot our need to resolve the issue of the supervisory defendants' qualified immunity.

11. We point out that the basis of Judge Sprizzo's opinion in *Gittens* was a 1987 decision by Haskell that was reversed for this very reason.

It appears that discovery has been completed in this case since the parties have moved and cross-moved for summary judgment. Therefore, the case will be added to the ready trial calendar as of February 1, 1990.

SO ORDERED.