Kevin **RICHARDSON,** Plaintiff–Appellant,

v.

Donald **SELSKY,** Clement Capuano, William Fenton, Bernard Lonczak, Defendants–Appellees.

No. 987, Docket 92–2681.

United States Court of Appeals, Second Circuit.

Argued Feb. 11, 1993.

Decided Sept. 22, 1993.

Paul J. Mahoney, New York City (Elizabeth S. Ferguson, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for plaintiff-appellant.

Dvora Wolff Rabino, Asst. Atty. Gen., New York City (Robert Abrams, Attorney General of the State of N.Y., of counsel), for defendants-appellees Donald Selsky, Clement Capuano and William Fenton.

Before: KEARSE, CARDAMONE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Kevin Richardson appeals from a judgment of the United States District Court for the Southern District of New York (Vincent L. Broderick, Judge), entered in his suit brought pursuant to 42 U.S.C. § 1983 (1988), granting the defendants-appellees' motion for summary judgment, and denying appellant's cross-motion for summary judgment. We affirm on the ground of qualified immunity.

## BACKGROUND

At all times pertinent to this action, Kevin Richardson was an inmate at Green Haven Correctional Facility ("Green Haven"). Donald Selsky was the Director of Special Housing and the Coordinator of the Inmate Disciplinary Program for the New York State Department of Correctional Services; Clement Capuano was a deputy superintendent at Green Haven, where William Fenton was a lieutenant and Bernard Lonczak was a correction officer.

On February 2, 1985, James Caroline, an inmate, was stabbed in the "G & H yard" at Green Haven Correctional Facility. As a result of the assault, Caroline was hospitalized for at least one week. Fenton was assigned to investigate the assault. He received a written note dated February 5, 1985, from Correction Officer Gary Brooking, in which Brooking stated that, based upon information he had received from two confidential sources, he believed that Richardson stabbed Caroline or instructed someone else to do so. On February 8, 1985, Richardson

was placed in involuntary protective status and a misbehavior report was issued against him. The misbehavior report stated that the prison administrators had received information that Richardson was responsible for Caroline's stabbing and that Richardson was being placed in involuntary protection for the safety of Caroline and the security of the facility. On February 21, 1985, a hearing was held to determine whether there was sufficient evidence to show that protective custody was necessary for him. At the conclusion of the hearing, the presiding officer found that there was not sufficient evidence to warrant placing Richardson in protective custody.

On February 25, 1985, a second misbehavior report was issued against Richardson, and he was transferred to a special housing unit pending a hearing. The misbehavior report stated that the prison administrators had received information that Richardson had assaulted Caroline on February 2, 1985. A superintendent's proceeding began on March 1, 1985, with Capuano as the presiding officer. After the charges were read to him, Richardson pleaded not guilty and requested that Caroline be called as a witness. He also presented a note from Caroline that stated: "I James Caroline is [sic] stating that me and Richardson 80–A3080 are friends, and he's not the one who stabbed me." Capuano agreed to interview Caroline and any other available witnesses. Capuano, however, declined to interview Caroline in Richardson's presence, due to concerns regarding prison security, whereupon the hearing was adjourned.

On March 7, 1985, Capuano, again acting as the presiding officer, reconvened the hearing. Caroline sent a note that read: "I[,] James Caroline 82A3323 did [sic] not desire to testify at Kevin Richardson['s] 80A3080 hearing." Capuano interviewed Lieutenant Fenton in Richardson's presence. Fenton stated that he had received information from "some sources that I know who they are and I'd rather not tell and there are some sources that I do not know who they are because they did not identify themselves." All of these sources, he stated, identified Richardson as the person who stabbed Caroline.

With regard to the confidential sources, Fenton asserted that they had "proven reliable," that in his previous dealings with them he had had "positive results," and that he was "certain that the information [he] had received [was] accurate." Fenton said that, according to the confidential sources, Richardson had retaliated against Caroline for refusing to be a witness on his behalf in a separate proceeding. Capuano directed that Richardson be escorted from the hearing room, whereupon Capuano interviewed Fenton outside of Richardson's presence.

Upon Richardson's return to the hearing room, Capuano stated that he would not disclose to him the confidential sources whom Fenton had revealed *in camera*. Finally, Capuano informed Richardson that he had been found guilty of assaulting Caroline, and he explained that in making this determination he had relied upon "testimony as presented by Lt. Fenton who stated that through facility records[,] reports, and confidential witnesses that reliable officers received as well as through his confidential interviews received identified Richardson as the person who attacked inmate Caroline. . . ." Capuano stated that he found these sources more credible than Richardson's denial and Caroline's written statement. A penalty of 365 days of confinement in·the Special Housing Unit, with a corresponding loss of various privileges, and 365 days loss of "good time" credits was imposed upon Richardson, who then filed administrative appeals. In April 1985, all aspects of the hearing were affirmed by Selsky in his capacity as Coordinator of the Inmate Disciplinary Program.

Richardson thereafter sought a writ of habeas corpus in the Supreme Court of the State of New York, Dutchess County. The court converted the matter into an Article 78 proceeding and, in an order dated August 15, 1985, it ruled that: "The hearing officer had no independent basis for making any evaluation of the credibility of Lt. Fenton's 'confidential informants,' since he did not communicate with any of them. He improperly relied upon Lt. Fenton's unsupported conclusory opinions and hearsay statements concerning their reliability and credibility." Ac-

cordingly, the court ordered the vacatur of the hearing officer's disposition and the expungement of the matter from Richardson's records.

On June 23, 1986, Richardson, proceeding *pro se* and *in forma pauperis*, commenced this § 1983 suit in the United States District Court for the Southern District of New York, seeking damages, attorneys fees and costs from the defendants for their alleged violation of his constitutional rights. The complaint asserted that Correction Officer Lonczak had prepared the misbehavior report that resulted in the superintendent's proceeding; that Lieutenant Fenton was the sole witness called against him at the proceeding; that Deputy Superintendent Capuano conducted the hearing; and that Director Selsky had affirmed the hearing officer's disposition. In their answer, the defendants, although denying they violated his constitutional and civil rights, made admissions to the basic facts alleged in the complaint but pleaded, *inter alia*, qualified immunity as an affirmative defense. The matter was subsequently assigned by Judge Broderick to Magistrate Judge Grubin for pre-trial supervision, and later counsel was appointed for Richardson.

On October 5, 1988, the defendants moved for summary judgment, claiming, *inter alia*, that Richardson's constitutional rights had not been violated, and that they were entitled to qualified immunity for their actions. They submitted affidavits in support of their motion. Fenton stated in his affidavit that he had been informed by Lonczak that two proven, reliable sources said that Richardson had stabbed Caroline, that Officer Brooking had said that two inmates had told him that Richardson had stabbed Caroline, and that several anonymous notes from inmates indicated that Richardson had stabbed Caroline. Lonczak stated in his affidavit that he had been assigned to assist Fenton in the investi-

gation of the assault and to guard Caroline in the hospital. Lonczak stated that on separate occasions, two proven, reliable sources had informed him that Richardson was Caroline's assailant, that he saw an anonymous note written by an inmate, which stated that Richardson had stabbed Caroline, and that one informant stated that the stabbing was a reprisal by Richardson for Caroline's refusal to testify on his behalf in another proceeding. Capuano, in his affidavit, asserted that he interviewed Fenton and Lonczak outside of Richardson's presence and that both officers "provided me with the names of the informants, their reliability and the information provided by the informants." He claimed that his interviews with Fenton and Lonczak were electronically recorded. On April 18, 1990, Richardson cross-moved for partial summary judgment and stipulated to the dismissal of his claims against Correction Officer Lonczak.

In reply to Richardson's cross-motion for summary judgment, Lonczak, Fenton and Capuano filed supplemental affidavits in which they stated that, when interviewed outside of Richardson's presence, Fenton and Lonczak informed Capuano that they had been personally told by Caroline that Richardson had stabbed him.[1] Capuano stated that this testimony was the "main factor" in making his finding that Richardson had stabbed Caroline. A senior stenographer at Green Haven submitted an affidavit dated May 4, 1990, stating that, despite a thorough search, neither the tape nor a transcript of the confidential portion of the March 7, 1985 hearing presided over by Capuano, could be located. The stenographer asserted that it was departmental policy to recycle old tapes. She also stated that it was very likely that the tape in question was recycled and that it was likely that the confidential tape was not transcribed because it was normal procedure to transcribe only the "main portion" of the hearing, unless a specific request was made

---

1. The defendants' attorney stated in an affidavit that Caroline was not named in the earlier affidavits because Richardson was proceeding *pro se* and that if he had been provided with Caroline's name, Caroline's life may have been placed in jeopardy. After Richardson was assigned counsel and it was determined that Caroline was no longer in the New York State prison system,

Caroline's name was disclosed to his attorney. A subsequent court order dated May 1, 1990, directed that Caroline's name be redacted on all papers provided to Richardson. On June 8, 1990, the magistrate judge ordered the release of Caroline's name to Richardson, after receiving written notice that Caroline had died in 1989.

for a transcription of the confidential portion of the hearing. Richardson later moved unsuccessfully in the district court to strike the supplemental affidavits, asserting that portions of the defendants' supplemental affidavits were contradicted by their answer to his *pro se* complaint.

On April 9, 1992, Magistrate Judge Grubin issued a Report and Recommendation to the district judge; she stated that "the primary issue raised by plaintiff in this action is the extent to which a prison hearing officer may rely only upon information from confidential informants and/or the hearsay testimony of correction officers to impose discipline on an inmate." After noting that neither the United States Supreme Court nor this Court had addressed this issue, she observed that courts in the Southern District of New York "have followed the leads of the Third and Eleventh Circuit Courts of Appeal in holding that in such situations a hearing officer must make an 'independent assessment' of the credibility of the informants and the reliability of their information." (quoting *Russell v. Coughlin*, 774 F.Supp. 189, 196 (S.D.N.Y. 1991)) (citing *Helms v. Hewitt*, 655 F.2d 487, 503 (3d Cir.1981), *rev'd on other grounds*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Kyle v. Hanberry*, 677 F.2d 1386, 1392 (11th Cir.1982); *Howard v. Wilkerson*, 768 F.Supp. 1002, 1007 (S.D.N.Y.1991); *Vasquez v. Coughlin*, 726 F.Supp. 466, 470–71 (S.D.N.Y.1989); *Gittens v. Sullivan*, 720 F.Supp. 40, 43 (S.D.N.Y.1989); and *Wolfe v. Carlson*, 583 F.Supp. 977, 980–82 (S.D.N.Y. 1984)). She subsequently stated: "Because Caroline, the victim of the assault, was able to name his assailant, there is no difficulty in concluding that Capuano had an adequate basis to evaluate the reliability of Caroline's reported identification of plaintiff. Caroline's information would have been, of course, made with personal knowledge, and there is no reason to doubt its credibility. That Caroline's identification of his assailant was made to both Fenton and Lonczak on separate occasions further supported Capuano's assessment of its reliability." (footnotes omitted).

Richardson filed objections to the Report and Recommendation. The district court conducted a *de novo* review of the law, overruled Richardson's objections, adopted the magistrate judge's Report and Recommendation, granted summary judgment for the defendants, and denied Richardson's cross-motion for summary judgment. This appeal followed.

## DISCUSSION

On appeal, Richardson principally contends that Capuano's failure to make an independent assessment of the reliability of the confidential informants deprived him of his due process rights. Although he acknowledges that this Court has not ruled upon the due process issue, Richardson relies upon *Taylor v. Wallace*, 931 F.2d 698, 702 (10th Cir.1991), *Hensley v. Wilson*, 850 F.2d 269, 276–77 (6th Cir.1988), *Henderson v. Carlson*, 812 F.2d 874, 880 (3d Cir.), *cert. denied*, 484 U.S. 837, 108 S.Ct. 120, 98 L.Ed.2d 79 (1987), *Mendoza v. Miller*, 779 F.2d 1287, 1295–96 (7th Cir. 1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986), *Kyle*, 677 F.2d at 1390–91, and *Russell*, 774 F.Supp. at 192–97, *Gittens*, 720 F.Supp. at 42–43, and *Vasquez*, 726 F.Supp. at 471, to argue that this Court should adopt a standard requiring a prison disciplinary hearing officer to make an independent assessment of the reliability of a confidential informant before relying on evidence from this source against an inmate. He claims that neither the magistrate judge nor the district judge properly applied this principle to the facts herein. Relying upon *Dawson v. Smith*, 719 F.2d 896, 899 (7th Cir.1983), *cert. denied*, 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984), *Smith v. Rabalais*, 659 F.2d 539 (5th Cir. Unit A Oct. 1981), *cert. denied*, 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982), *Kyle*, 677 F.2d at 1392, *Helms*, 655 F.2d at 503, and *Gomes v. Travisono*, 510 F.2d 537, 540 (1st Cir.1974) (per curiam), Richardson contends that the appellees are not entitled to qualified immunity because the law was sufficiently established by the time of the March 1985 hearing to alert the appellees to the need to independently assess the reliability of the confidential informants, and to record this assessment.

■ We reject Richardson's qualified immunity argument. Although the district court did not address the appellees' claim that they were entitled to qualified immunity, we may affirm on any basis supported by the record, including grounds upon which the district court did not rely. *See Citrus Marketing Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 223 (2d Cir.1991). We affirm the district court's grant of summary judgment on the ground of qualified immunity, though we note that if the circumstances of·this case had occurred on a more recent date, the result herein might well have been different.

■ Summary judgment may be granted if, upon reviewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Public officials are entitled to qualified immunity from liability for civil damages so long as their conduct does not violate a clearly established statutory or constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). Public officials receive this protection upon establishing that it was objectively reasonable for them to believe that their acts did not violate clearly established rights. *See Anderson v. Creighton*, 483 U.S. 635, 638–40, 107 S.Ct. 3034, 3037–38, 97 L.Ed.2d 523 (1987). These officials' actions are to be "assessed in light of the legal rules that were 'clearly established' at the time [the actions are] taken." *Id.* at 639, 107 S.Ct. at 2038 (citing *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738). Summary judgment in favor of public officers may be appropriate when a qualified immunity defense is based upon a showing that it was not clear at the time of the officials' acts that the interest asserted by the plaintiff was protected by federal law. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993). A court also may grant summary judgment even if the contours of the plaintiff's federal rights and the public officials' permissible actions were clearly delineated at the time of the actions complained of, if it was objectively reasonable for the officials to believe that their actions did not violate those rights. *Id.*

In determining whether a particular right was clearly established at the time defendants acted, this Court has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *See Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989) (citing *Anderson*, 483 U.S. at 640, 107 S.Ct. at 2980).

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

■ The Supreme Court has not ruled upon the extent to which a prison hearing officer may rely only upon information from confidential informants and/or the hearsay testimony of correction officers to determine whether an inmate is guilty of charges leveled against him; but two of the Court's decisions in the prison disciplinary context do provide some guidance on the issue.

In June 1974, in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court established that prison disciplinary hearings had to satisfy the minimal procedural due process requiréments by providing an inmate with twenty-four hours advance written notice of the disciplinary charges against him and a written statement by fact-finders as to the evidence relied upon for their disposition of the charges and the reasons for the disciplinary action. The Court also ruled that, subject to the circumstances of the case and the prison administrator's discretion, a prisoner should be allowed the opportunity to call witnesses and to present documentary evidence, but that prison administrators had greater discretion in not permitting confrontation and cross-examination of those furnishing evidence against the inmate. *Id.* at 564–69, 94 S.Ct. at 2978–82. It is noteworthy for purposes of our inquiry that three members of

the Supreme Court expressed concern that the majority's analysis permitted prison administrators to keep the identity of informants confidential in all cases. *Id.* at 584–87, 94 S.Ct. at 2988–90 (Marshall, J., with Brennan, J., concurring in part and dissenting in part) (suggesting need to keep identity of informants confidential will exist in small percentage of disciplinary cases); *id.* at 593, 94 S.Ct. at 2993 (Douglas, J., dissenting in part, concurring in the result in part) (stating majority permitted prison officials "to rely on secret evidence provided by secret accusers").

Eleven years later, in June 1985, in *Superintendent, Mass. Correctional Institution v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the Supreme Court addressed "whether findings of a prison disciplinary board that result in the loss of good time credits must be supported by a certain amount of evidence in order to satisfy due process." *Id.* at 453, 105 S.Ct. at 2773. The Court held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....'" *Id.* at 455, 105 S.Ct. at 2774 (citation omitted). The Court noted that its standard did not require examination of the entire record, independent assessment of the credibility of witnesses or the weighing of evidence, but only consideration of whether there was any evidence in the record that could support the conclusion reached by the prison disciplinary board. *Id.* at 455–56, 105 S.Ct. at 2774–75. Thus, under *Wolff* in prison disciplinary proceedings, prisoners may be allowed to confront and cross-examine their accusers, and they are entitled to a written statement of the evidence relied upon and the reasons for the disciplinary action. *Hill,* in turn, established that the written record of the disciplinary hearing had to sufficiently support the conclusion reached by the prison disciplinary officials to satisfy due process.

As noted, this Circuit has yet to rule upon the issue of whether an inmate has a right to an independent assessment of the credibility of confidential informants and a contemporary record of that assessment; but, we have dealt with issues arising in related contexts. In *Zavaro v. Coughlin,* 970 F.2d 1148 (2d Cir.1992), we considered whether there was some evidence of an inmate's guilt to support the prison disciplinary officer's finding that in July 1988 the inmate was guilty of throwing trays at a correction officer and throwing other objects. *Id.* at 1151. According to the hearing officer, his determination of guilt was based upon a misbehavior report, the inmate's statement that he was present at the scene, and statements of confidential informants. *Id.* On appeal, the officer conceded that there was no evidence of the reliability of the confidential informants and, as we noted, he no longer relied upon the information that they had supplied to support the disciplinary sanction. *Id.* at 1153 n. 1. We concluded that the evidence in the record failed to meet the "some evidence" requirement of *Hill.* In rejecting the officer's qualified immunity defense, we concluded that an "inmate's right not to be adjudicated guilty without some evidence to support that finding was clearly established by 1988, when the hearing occurred" and that there was nothing in the record "[o]ther than statements from informants of unassessed reliability" to support the disciplinary sanction. *Id.* at 1153–54. Thus, when *Zavaro* was decided on July 31, 1992, this Court clearly implied that prison officials should independently assess an informant's reliability if they relied upon that information in a disciplinary hearing.

On June 4, 1993, we decided *Russell v. Scully,* No. 92–2057, slip. op. 3717, 1993 WL 188677 (2d Cir. June 4, 1993). In *Russell,* we declined to decide "whether or not prisoners in 1989 had a clearly established right to an independent examination of the credibility of confidential informants" because the inmate therein "was subject[ed] only to a valid administrative confinement pending his hearing and appeal and suffered no deprivation of a protected liberty interest." *Id.,* slip op. at 3721.

In neither *Zavaro* nor *Russell* did this Court directly consider whether prisoners had a clearly established right to have a prison disciplinary officer independently examine the credibility of confidential infor-

mants—and certainly in neither did the Court consider the instant issue as of March 1985.

We conclude that Richardson has not established that it was clear in this Circuit as of March 1985 that he had a right to have the presiding officer at the disciplinary hearing independently examine the credibility of the confidential informants. As we have noted, neither the Supreme Court nor this Court has ruled on this issue, *a fortiori* it cannot be said that the right in question was defined with "reasonable specificity" by either the decisional law of the Supreme Court or of this Circuit. Although "under certain circumstances, the absence of specific authority directly on point will not preclude a finding that the law was clearly established," *Shabazz v. Coughlin*, 852 F.2d 697, 701 (2d Cir. 1988), this is not such a case. We do not believe that as of March 1985, under preexisting law a reasonable prison official would have understood that the challenged acts were unlawful because it was not yet clear, certainly in this Circuit, as of that date, that the subject conduct was unlawful. We note that it was not until June 1985, after the events complained of herein, that *Hill* established that the findings of a prison disciplinary hearing had to be supported by "some evidence from which the conclusion of the administrative tribunal could be deduced," *Hill*, 472 U.S. at 455, 105 S.Ct. at 2774 (citation omitted)—a different issue than is presented herein.

To be sure, by 1985, other circuits had begun to adopt various approaches in addressing a prisoner's due process right to have a hearing officer assess the credibility and the reliability of an unidentified informant in prison disciplinary proceedings. *See, e.g., Dawson*, 719 F.2d at 899 (appellate court reviewed material submitted to prison disciplinary committee); *Kyle*, 677 F.2d at 1390 (requiring prison disciplinary committee to establish informant's reliability and to create record that so demonstrates); *Smith*, 659 F.2d at 546 (approving use of correction officer's testimony that he knew informers, used them in past, and that they had first hand knowledge of the incident as sole evidence against inmate); *Helms*, 655 F.2d at 502 (requiring prison disciplinary committee to establish informant's reliability and to create record that so demonstrates); *Gomes*, 510 F.2d at 540 (same). However, as of March 1985, when Richardson's disciplinary hearing was held, in this Circuit the contours of his claimed federal rights and the prison disciplinary officers' permissible actions were not clearly delineated. We think it was objectively reasonable for the officers to believe that their actions did not violate clearly established law. We are aware that some of the decisions of the Southern District of New York, which have considered this issue, appear to be somewhat contradictory. For example, although a 1991 decision in the Southern District of New York held that the right had been established as early as October 1984, *see Howard*, 768 F.Supp. at 1008, a 1989 decision in the same district had held that the right was not clearly established as late as October 1987, *see Gittens*, 720 F.Supp. at 42–44. *See also Russell*, 774 F.Supp. at 199 (right clearly established within Second Circuit by 1989); *Vasquez*, 726 F.Supp. at 472 (right established within Circuit by 1986); *Wolfe*, 583 F.Supp. at 979–82 (disciplinary committee's September 1980 action not arbitrary when committee was given summaries by prison officials of the testimony of two confidential informants, and told that one informant had given accurate information in past).

■ The disparate rulings in these cases further confirm our conclusion that the issue was not clearly established within this Circuit as of March 1985. If the district judges in the Southern District of New York, who are charged with ascertaining and applying the law, could not determine the state of the law with reasonable certainty, it seems unwarranted to hold prison officials to a standard that was not even clear to the judges, especially since prescience on the part of prison officials is not required with respect to the future course of constitutional law. *See McCann v. Coughlin*, 698 F.2d 112, 124 (2d Cir.1983). Moreover, a district court decision does not "clearly establish" the law, even in its own circuit. *See Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir.1987). We are aware that in another proceeding appellee Selsky testified that in 1985 he was reversing

**624**

hearing officer decisions, in which the officer failed to adequately assess the credibility and reliability of confidential informants. *Vasquez*, 726 F.Supp. at 473–74. We do not draw from this incipient awareness of an emerging issue of due process that Selsky understood that the hearing officer's actions in this case were unlawful. Since we believe that it was objectively reasonable for the prison officers herein to believe that their actions did not violate Richardson's rights, we conclude that appellees were entitled to judgment as a matter of law, and, hence, that the district court correctly entered summary judgment in their favor.

"Prison officials are charged with knowledge of relevant decisional law, especially the decisions of the circuit in which they perform their official duties." *Francis*, 891 F.2d at 46. In recent months, this Court has considered—but only today addressed—whether the law within this Circuit is clearly established that prisoners have a right to an independent examination of the credibility of confidential informants. *See Russell*, slip op. at 3721. As of March 1985, the law was not so clearly established. However, as *Zavaro* implied, there must be some evidence in the record of the informant's reliability. 970 F.2d at 1153–54. One means of satisfying this standard is for prison officials contemporaneously and independently to assess the credibility of the informants, and to create and preserve a record of that assessment. *See Hensley*, 850 F.2d at 283. Such a record should be available for administrative or judicial review to insure that the conclusion reached by the prison disciplinary officials satisfies due process. *See Hill*, 472 U.S. at 454, 105 S.Ct. at 2773.

## CONCLUSION

For the foregoing reasons, the district court's judgment is affirmed.