**Lorenzo GLASPIE, Plaintiff,**

v.

**John MAHONEY; Donald Selsky; Mason Harrell, Defendants.**

**No. 94 Civ. 3285 (JES).**

United States District Court,
S.D. New York.

Aug. 20, 1997.

Lorenzo Glaspie, Napanoch, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York, New York City (William Toran, Assistant Attorney General, of coun-

sel), for defendants John Mahoney, Donald Selsky, and Mason Harrell.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Incarcerated plaintiff *pro se* Lorenzo Glaspie ("Glaspie") brings the above-captioned action pursuant to 42 U.S.C. § 1983, alleging violations of his Fifth, Eighth, and Fourteenth Amendment rights in connection with a disciplinary hearing held at Sing Sing Correctional Facility ("Sing Sing"). Pursuant to Federal Rule of Civil Procedure 56, defendants John Mahoney ("Mahoney"), Donald Selsky ("Selsky"), and Mason Harrell ("Harrell") (collectively the "defendants") move for summary judgment and Glaspie cross-moves for summary judgment. For the reasons set forth below, defendants' motion for summary judgment is granted and plaintiff *pro se*'s cross-motion for summary judgment is denied.

## BACKGROUND

The above-captioned action arises out of a Tier III disciplinary hearing (the "hearing") held at Sing Sing on October 9, 16, 26 and 27, 1992. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defts.' Mem."), dated September 10, 1996, at 3; Plaintiff's Answering Brief Memorandum of Law Opposing Defendants [sic] Motion for Summary Judgment ("Pltf.'s Mem."), dated December 9, 1996, at 3. Glaspie was found guilty of acting in concert with two other inmates in the vicious attack on a fellow inmate, David Brown ("Brown"), which resulted in Brown being stabbed multiple times.[1] *See* Defts.' Mem. at 2, 3; Pltf.'s Mem. at 3.

The main issue at the hearing was the identity of Brown's attackers. Glaspie, claiming that he did not participate in the attack, offered the testimony of Brown, who testified by telephone that he was attacked from behind by attackers that he believed were "white" or "hispanic" because he saw blonde hair.[2] *See* Transcript of Tier III Hearing ("Tr.") dated October 9, 16, 26, and 27, 1992 attached as Exh. 4 to Defendants' Notice of Motion ("Defts.' Not. Mot.") dated September 10, 1996, at 4–5. Glaspie also called fellow inmates Andre Liverpool # 88–T–2371 and Mr. Coleman # 90–A–8582 to testify that each saw Glaspie in his locked cell at or about the time of the assault on Brown. *See* Tr. at 17–20. In addition, Glaspie's alleged co-assailant, inmate Ronald Munnerlyn # 90–T–1337 ("Munnerlyn"), testified that he was not robbed by Brown the day before the assault, *see* Tr. at 13, thus contradicting testimony that the attack on Brown was retaliatory.[3] *Id.* at 11. Finally, Glaspie offered a "go-around" sheet as proof that he was locked in his cell the morning of the attack.[4] *Id.* at 3.

To establish Glaspie as one of Brown's attackers, Corrections Officer Jose Flores ("C.O. Flores"), the author of the misbehavior report regarding the attack on Brown, testified as to information supplied to him by a confidential informant. *See* Tr. at 10. C.O. Flores testified that the confidential informant, who had witnessed first-hand the brutal attack on Brown, identified Glaspie and his co-assailants out of a photographic array of approximately 300 photographs as the inmates that had attacked Brown. *See* Defts.' Mem. at 3; Tr. at 7, 28. C.O. Flores also testified that he had used this confiden-

---

1. Brown sustained several stab wounds to his back, his side and to his legs. In addition, a section of skin from his lower back was cut out. *See* Transcript of Tier III Hearing ("Tr.") dated October 9, 16, 26, and 27, 1992 attached as Exh. 4 to Defendants' Notice of Motion ("Defts.' Not. Mot.") dated September 10, 1996, at 7.

2. Plaintiff is an African American. *See* Form to be Used By Prisoners in Filing a Complaint under the Civil Rights Act, 42 U.S.C. § 1983 ("Am. Compl."), dated March 6, 1996, at ¶ 11.

3. Following a detailed evaluation of his possible relevance to the hearing and over Glaspie's ob-

jection, Hearing Officer Mahoney denied Glaspie's request to call inmate Mr. Edwards # 90–T–1210 as a witness on the grounds that Edwards' proposed testimony that he and Glaspie were friends would be immaterial to the hearing. *See* Tr. at 20–22.

4. A "go-around" sheet is an internal tracking device used by the prison staff to locate prisoners within the facility when they have a visitor. *See* Defts.' Mem. at 3, n. 2; Tr. at 15. The record is unclear whether the inmates or their guards fill out the "go-around" sheet. *Compare* Tr. at 15, 23–24 *with* Am. Compl. at 5.

tial informant in the past and the information supplied by him had been "extremely creditable." *See* Tr. at 12. At no time during the hearing did Hearing Officer Mahoney speak with the confidential informant nor did he even know the informant's true identity. *Id.* at 26. Glaspie's request to have the identity of the confidential informant disclosed was denied by Mahoney on the grounds that the prison would not be able to protect the informant from physical harm in the prison population.[5] *Id.* at 9, 26–28.

C.O. Flores further testified that he saw Keith Harrell # 84–B–2456, an inmate who was identified as one of Brown's co-assailants, being carried by another inmate towards the prison's emergency room the morning of the attack on Brown. *See* Tr. at 8. C.O. Flores testified that Keith Harrell told him that he had been stabbed in the leg. *Id.*

To establish that Glaspie had access to the area where the attack on Brown occurred, Corrections Officer Harrell testified that a "go-around sheet," like the one offered by Glaspie to prove that he was in his cell at the time of the assault, is generally correct only fifty percent of the time. *See* Tr. at 16. Harrell further stated that although he had never personally completed a "go-around" sheet, *see id.* at 24–25; Pltf.'s Mem. at 7, he had heard from other corrections officers that a number of prisoners had disarmed the prison's electronic door locking mechanisms in the past using magnets and other devices in order to sneak out of their cells undetected. *Id.* at 26.

On October 27, 1992, Hearing Officer Mahoney found Glaspie guilty of assault on an inmate and sentenced him to 730 days confinement in the Special Housing Unit ("S.H.U."),[6] 730 days loss of commissary, packages and phones, and two years loss of "good time." [7] *See* Tr. at 28. On November 4, 1992, Glaspie appealed Hearing Officer Mahoney's decision. *See* Pltf.'s Mem. at 7. On December 30, 1992, Glaspie was notified that Selsky, Director of Special Housing and Inmate Discipline for the Department of Correctional Services, had affirmed Mahoney's decision.[8] *Id.*

On March 7, 1994, Glaspie filed suit in federal district court.[9] *See* Form to be Used By Prisoners in Filing a Complaint under the Civil Rights Act, 42 U.S.C. § 1983, dated March 7, 1994. On May 15, 1996, Glaspie filed an Amended Complaint, claiming that he was denied due process by Hearing Officer Mahoney's, (1) failure to address the evidence presented on Glaspie's behalf; (2) failure to independently assess the reliability of the confidential informant; (3) by Harrell's misleading testimony at the hearing regarding the "go-around" sheet and electronic doors; and (4) by Selsky's failure to reverse Mahoney's decision. Glaspie also claims that Mahoney and Selsky denied him due process by subjecting him to confinement in the S.H.U. prior to the final disposition of the charges against him. *See* Form to be Used By Prisoners in Filing a Complaint under the

---

5. Since Glaspie has never challenged the prison's failure to produce or identify the confidential informant at the hearing, the Court will not address the constitutionality of the prison's action in that respect.

6. Glaspie was confined to the S.H.U. on October 5, 1992, the day he was charged with the assault on Brown, and housed there throughout the hearing. *See* Pltf.'s Mem. at 3.

7. Mahoney detailed the reasons for his decision, including: C.O. Flores' testimony about the confidential informant's statements related to him which identified Brown's assailants; C.O. Flores' first-hand account of how he saw inmate Keith Harrell being carried to the emergency room and his admission that he had been stabbed; and Harrell's testimony as to the accuracy of the "go-around" sheet and that electronic cell doors

could be opened by inmates using certain magnetic devices. *See* Tr. at 28. Hearing Officer Mahoney specifically stated that he found the facts provided by the confidential informant, through the testimony of C.O. Flores, to be credible. *Id.*

8. On January 13, 1993 Glaspie sent Selsky a letter requesting that he reconsider and investigate the matter further. *See* Pltf.'s Mem. at 7; Defts.' Not. Mot., Exh. 6. On April 14, 1993, Robert Murphy, Acting Director of S.H.U., notified Glaspie by letter that Selsky's affirmance of Mahoney's decision was appropriate. *See* Defts.' Not. Mot., Exh. 6.

9. On April 12, 1994, Glaspie's application to proceed *in forma pauperis* was granted. *See* Declaration in Support of Request to Proceed In Forma Pauperis, dated April 12, 1994.

Civil Rights Act, 42 U.S.C. § 1983 ("Am. Compl."), dated March 6, 1996.

On September 10, 1996, defendants moved for summary judgment, claiming, *inter alia:* that Glaspie's confinement in the S.H.U. did not implicate a liberty interest; that even if Glaspie's confinement implicated a liberty interest, Glaspie was afforded due process at the hearing because Hearing Officer Mahoney adequately assessed the credibility of the confidential informant; that defendant Harrell's testimony given in an official proceeding is immune from constitutional tort liability; and that defendants are entitled to qualified immunity.[10] *See* Defts.' Mem. at 6, 8, 12, 13.

On January 10, 1997, Glaspie filed a response to defendants' motion and cross-moved for summary judgment pursuant to Fed.R.Civ.P. 56(a), claiming, *inter alia,* that he had been denied due process by Hearing Officer Mahoney's "utter failure" to make an independent assessment of the confidential informant's credibility and reliability; that defendants were not entitled to qualified immunity; and that his confinement in the S.H.U. does implicate a liberty interest.[11] *See* Pltf.'s Mem. at 8, 17, 20. The Court took both motions for summary judgment under submission.

## DISCUSSION

### *Qualified Immunity*

■ The Supreme Court has clearly defined those situations where government officials enjoy qualified immunity in performing discretionary functions:

[T]he[se] defendants enjoy a qualified immunity that shields them from personal liability for damages under section 1983

"insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Zavaro v. Coughlin,* 970 F.2d 1148, 1153 (2d Cir.1992), or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights, *see Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Oliveira v. Mayer,* 23 F.3d 642, 648 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995).

*Martinez v. City of Schenectady,* 115 F.3d 111, 114 (2d Cir.1997) (quoting *Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir.1994)); *see also Brown v. City of Oneonta,* 106 F.3d 1125, 1130–31 (2d Cir.1997). The acts in question should be "assessed in light of the legal rules that were 'clearly established' at the time [the actions were] taken." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993) (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038 (1987)). Where, as here, "a qualified immunity defense is based upon a showing that it was not clear at the time of the officials' acts that the interest asserted by the plaintiff was protected by federal law," *Richardson,* 5 F.3d at 621 (citing *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993)), summary judgment is appropriate. *Richardson,* 5 F.3d at 621.

■ Although the Second Circuit has defined three factors that a district court should consider in determining whether a right was "clearly established" at the time a public official acted, see *Jermosen v. Smith,* 945 F.2d 547, 549–550 (2d Cir.1991), *cert. denied* 503 U.S. 962, 112 S.Ct. 1565, 118

**10.** The procedural history of this action can be summarized as follows: by letters dated October 23, 1996, and November 1, 1996, Glaspie requested that the Court extend his time in which to file a response to defendants' motion for summary judgment. *See* Letter from Lorenzo Glaspie, *pro se* to Hon. John E. Sprizzo, dated October 23, 1996 (on file in Chambers) Letter from Lorenzo Glaspie, *pro se* to Nancy Regan, Law Clerk dated November 1, 1996 (on file in Chambers). By Orders dated November 25, 1996, and December 6, 1996, the Court twice extended Glaspie's time in which to file a response to defendants' motion for summary judgment to

December 31, 1996, and January 13, 1997, respectively. By Order dated January 7, 1997, the Court adjourned the Pre–Trial Conference scheduled to be held on January 10, 1997, until February 14, 1997.

**11.** By Order dated February 13, 1997, in light of Glaspie's unanticipated cross-motion for summary judgment, the Court permitted defendants to file a response to the cross-motion and adjourned the Pre–Trial Conference scheduled to be held on February 14, 1997, until April 11, 1997.

L.Ed.2d 211 (1992) (citations omitted), the Court need not discuss these factors extensively because the United States Court of Appeals for the Second Circuit has explicitly stated that neither the Supreme Court nor the Second Circuit had clearly established that a disciplinary hearing officer must independently assess the reliability of a confidential informant at the time of the events in question. *See Richardson,* 5 F.3d at 621, 622.

In *Richardson v. Selsky,* 5 F.3d 616 (2d Cir.1993), an inmate brought a similar action pursuant to 42 U.S.C. § 1983 claiming that a hearing officer's failure to make an independent assessment of a confidential informant's reliability during a prison disciplinary hearing in 1985 deprived him of due process. The Court of Appeals, in holding that the hearing officer was entitled to qualified immunity, acknowledged that as of the time of the *Richardson* opinion in September 1993, "this Circuit has yet to rule upon the issue of whether an inmate has a right to an independent assessment of the credibility of confidential informants" *see id.* at 622 (emphasis added), and that "[i]n recent months, this Court has considered—*but only today addressed*—whether the law within this Circuit is clearly established that prisoners have a right to an independent examination of the credibility of confidential informants." *Id.* at 624 (citations omitted) (emphasis added). Although the Court of Appeals, in dicta, stated that "when *Zavaro* was decided on July 31, 1992, this Court clearly implied that prison officials should independently assess an informant's reliability if they relied upon that information in a disciplinary hearing," *see id.* at 622 (citations omitted), the court went on to find that "neither the Supreme Court nor this Court <u>has</u> ruled on this issue, a fortiori it cannot be said that the right in question was defined with 'reasonable specificity' by either the decisional law of the Supreme Court or of this Circuit." *Id.* at 624 (emphasis added).

Since the acts complained of here occurred over the course of Glaspie's disciplinary hearing on October 9, 16, 26 and 27, 1992, almost one year prior to the Second Circuit's decision in *Richardson,* Mahoney and Selsky are entitled to qualified immunity with respect to

Glaspie's claim that their failure to independently assess the credibility of the confidential informant violated his constitutional rights.

■ Similarly, Glaspie's claim that Mahoney and Selsky denied him due process by housing him in the S.H.U. prior to the final disposition of his hearing must also fail. The Second Circuit has held that a prisoner does not have a due process liberty interest in being confined to a general population cell pending that inmate's disciplinary hearing. *See Russell v. Scully,* 15 F.3d 219, 221–22 (2d Cir.1993). Furthermore, between the time when Glaspie was charged with assaulting Brown on October 5th and when Hearing Officer Mahoney rendered his decision on October 27th, Glaspie was confined to the S.H.U. for only three weeks. Glaspie has failed to allege any facts in his Amended Complaint which would support a finding by this Court that his confinement in the S.H.U. pending the final disposition of his disciplinary hearing imposed "atypical and significant hardship . . . in relation to ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). Therefore, the Court finds that Mahoney and Selsky did not violate Glaspie's due process rights in confining him to the S.H.U. pending final disposition of the hearing.

■ In light of the Supreme Court's opinion in *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (absolute immunity for witness in judicial proceeding), the claim against Harrell must be dismissed since that claim rests solely on his testimony as a witness in an official proceeding which is a legally insufficient predicate for constitutional tort liability.

### CONCLUSION

For reasons set forth above, defendants Mahoney, Selsky and Harrell's motion for summary judgment is granted and plaintiff *pro se* Glaspie's cross-motion for summary judgment is denied. The Clerk of Court is hereby ordered to enter judgment for defendants in the above-captioned action and to

dismiss plaintiff *pro se*'s action with prejudice.

It is **SO ORDERED.**